JAMES G. WHITE *vs.* NEAL E. McPECK & another.

Suffolk.    March 3, 4, 1904. — April 4, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Partnership. Insurance, Life,* Waiver of forfeiture. *Contract,* Consideration.

If by the terms of the partnership agreement between two partners it is provided, that each shall take out an insurance policy on his life payable to the other and that these policies shall be kept in force, the premiums on such policies as between the partners are partnership debts.

If a policy of life insurance by its terms becomes void on a failure to pay premiums at maturity, and provides that no agent can extend the time for payment of premiums and that the contract cannot be altered except by the written agreement of the company signed by one of certain officers named, yet, if the company accepts payment of premiums after they are due, the lapse of the policy for failure to pay the premiums is waived.

A promise by an insurance agent to pay the premiums due from each of two partners on certain insurance policies out of his own funds, the payment of the premiums being required from each partner by the terms of the partnership

agreement, is a good consideration for a promissory note of the partnership given to the agent by one of the partners for the amount of the premiums.

In an action on a promissory note signed in the name of a partnership by one of two partners and disputed by the other, it was held that a certain ruling requested by the defendant was refused rightly, in view of the fact that there was evidence of authority to give the note in behalf of the partnership and also of ratification by the other partner after the note was signed.

CONTRACT on a promissory note for $176. Writ in the Municipal Court of the City of Boston dated September 9, 1902.

On appeal to the Superior Court the case was tried before *Aiken*, J., without a jury. The judge refused the defendant Braman's requests for rulings which are stated in the opinion, and found for the plaintiff in the sum of $182.62. The defendant Braman alleged exceptions.

*W. M. Lindsay*, for the defendant Braman.

*T. W. Proctor*, for the plaintiff.

LORING, J. This is an action on a promissory note dated July 15, 1902, signed McPeck and Company. The defendants McPeck and Braman at that time were partners. The plaintiff put in evidence showing that he was and is the agent of the Travelers Insurance Company; that McPeck and Braman became partners on February 8, 1902; that before this partnership was formed McPeck had been doing business with one Alexander as a partner; that on February 8 McPeck held a policy on the life of Alexander in the Travelers Insurance Company represented by the plaintiff, payable to him, McPeck, and Alexander held a policy on McPeck's life payable to him, Alexander. When Braman became a partner of McPeck and Alexander ceased to be a partner Braman asked to have the policy on McPeck's life transferred to him and this was done " in consequence of his request," in the words of McPeck in his testimony. McPeck's testimony immediately after this is as follows: " Subsequently he took out this policy payable to me; this was one of the agreements between us." The third quarterly premium on the policy payable to Braman fell due April 24, 1902, and the second quarterly premium on the policy payable to McPeck fell due June 15. On or about July 2, the plaintiff sent his bookkeeper to demand the premiums; he returned and reported that Braman told him that he and McPeck had decided not to continue the insurance any longer. A day or two afterward the plaintiff saw

McPeck and said to him that he was surprised that Braman and he were not going to continue "this partnership agreement which you made," and on being asked what he meant replied, "Braman told my bookkeeper the other day that you had decided not to continue that insurance any longer." To which McPeck replied that "if Braman told you that, it is untrue; we have had no such conversation and I fully intend to keep up this insurance, and Mr. Braman, if he carries out the agreement which we made originally, should carry out his part of the contract, and if you will accept a partnership note, — it is not convenient for me to give you a check to-day for those premiums — but if you will accept a partnership note I will give it to you." In pursuance of this conversation the note sued on was given and the plaintiff, on July 29, paid the premiums to the company out of his own money.

At the trial in the Superior Court the defendant McPeck was defaulted and Braman introduced no evidence material on the matters now before us.

Braman asked the judge to rule (1) that on the facts the note was not given for partnership purposes, (2) that it was without consideration and (3) " that if the plaintiff or his agent received notice from the defendant Braman that he, the defendant Braman, did not wish to continue the expense incident to the policies of insurance in question, and subsequently, without the assent of said Braman, the plaintiff secured from the defendant McPeck the note in question, such action on the part of the plaintiff was in fraud of the defendant Braman, and the plaintiff cannot recover against the defendant Braman."

The defendant contends in support of the first ruling asked for that the application for each policy having been made by the person insured the premium was due from each and was not a partnership debt, and that this conclusion is reinforced by the provision contained in each policy that the person taking out the policy can revoke the designation of the beneficiary at pleasure. But there was evidence that one of the terms of the partnership agreement between McPeck and Braman was that these policies should be taken out and kept in force. That made the premiums as between the partners partnership debts.

In support of the second ruling asked for, the defendant Bra-

man contends that by its terms the policy became void on the premiums not being paid at maturity, and that it appears on the face of the policy that no agent can extend the time for payment of premiums, nor can the contract be altered except by the written agreement of the company signed by the president, vice-president, secretary or assistant secretary. But if the company subsequently accepted the money due as premiums, the lapse of the policy for the failure to pay them would be waived. The conversation in which the plaintiff agreed to take a note warranted the judge in finding that he agreed to forward to the company the premiums out of his own funds; that promise was a valid consideration for the note.

We are of opinion that on a fair construction of the third ruling asked for, the question presented by it is whether the giving of the notice prevented the plaintiff from recovering on this note, if Braman originally agreed to keep these policies in force and never in fact decided to break his agreement and the plaintiff in good faith believed such to be the fact, or if the giving of the note was ratified by Braman after it was given. In addition to the evidence already stated, McPeck testified and this testimony was uncontradicted: " I told Mr. Braman before we signed the note we would have to sign and pay it and we would pay it; I did not say what we would do; I told him I had signed it after it was done and he made no objection to it."

In this state of the evidence we think that the words " and subsequently, without the assent of said Braman, the plaintiff secured from the defendant McPeck the note in question," refers to an assent on Braman's part having been expressly given by Braman after the notice was given, and does not refer to there having been originally an agreement to keep up the policies and no deliberate decision by Braman to break it, nor to the note having been ratified by him after it was given.

*Exceptions overruled.*