MARGARET McNICHOLAS, administratrix, *vs.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Suffolk.    November 22, 23, 1905. — April 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Insurance*, Life. *Waiver*. *Contract*, Validity. *Evidence*. *Payment*. *Release*.

The lapse of a policy of life insurance for non-payment of premiums is waived by the insurer's acceptance of subsequent premiums paid under the policy.

The parties to a contract under which payments of money are required have a right to make an agreement as to the manner in which such payments shall be proved.

If a policy of life insurance for $201, requiring a weekly payment of a premium of fifteen cents, contains a provision that "payments of premiums to be recognized by the company must be entered at the time of payment in the premium receipt book belonging with this policy," one suing on the policy can show payments of premiums only by the book agreed upon by the parties or by proving a sufficient reason for a payment not being entered therein, and it is not competent for him to show, without proving such reason, that a payment was made to an agent of the defendant who did not enter it in the book.

An action on a policy of life insurance by the administratrix of the estate of the insured, who also is his widow, is not barred by a receipt not under seal signed by the plaintiff for a sum of money stated to be payment "in full for all claims against said company" under the policy in question, if there is evidence warranting the jury in finding that the plaintiff signed the receipt without reading it, that the defendant's superintendent fraudulently concealed from her the nature of its contents and that she supposed it to be a receipt for a payment on account.

In an action on a policy of life insurance for $201, which required a weekly payment of a premium of fifteen cents and provided that the insurance should be payable if the insured should die while the premium on the policy was in arrears for a period not exceeding four weeks, the question whether this provision had been complied with depended on whether the plaintiff, who was the administratrix of the estate of the insured and also was his widow, had made a payment of fifteen cents to the defendant on a certain day as alleged by her. On her direct examination the plaintiff testified that she made this payment to an agent of the defendant who had not credited it upon the book used for the purpose. On cross-examination she testified that the money for this payment was left by her with some one of her children to be delivered to the agent when he called, that she frequently left money in that way with them when she was going out and on her return would inquire whether the agent had called for the money. On redirect examination she testified that she had seven children, the oldest fourteen years of age, that when she went out she generally left the money with this oldest child, that she sometimes left it with the other children, but that the youngest child she ever left money with was ten years of age at that time. The plaintiff's oldest child was called as a witness, but was not asked whether

the money left with her was paid to the agent. No other child was called. *Held*, that there was no evidence for the jury that the plaintiff made the payment in question to the defendant's agent.

THE following statement of the case is taken from the opinion of the court:

This is an action on a policy of insurance dated October 9, 1899, whereby, so far as is material here, the defendant agreed in consideration of a weekly payment of fifteen cents to pay to the administratrix of the insured $201, unless settlement should be made under article second, on proof of death of the insured during the continuance of this policy, which is issued subject to the conditions on the back. Of those conditions the following are material in this case:

" 2nd. . . . The Company may make any payment provided for in this Policy to any relative by blood or connection by marriage of the Insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense in any way on behalf of the Insured, for his or her burial or for any other purpose, and the production by the Company of a receipt signed by any or either of said persons or of other sufficient proof of such payment to any or either of them shall be conclusive evidence that such Benefits have been paid to the person or persons entitled thereto, and that all claims under this Policy have been fully satisfied."

" 4th. . . . This policy shall be void . . . if the said weekly premium shall not be paid according to the terms hereof.

" 5th. . . . Payments [of premiums] to be recognized by the Company must be entered at the time of payment in the premium receipt book belonging with this Policy.

" 6th. . . . Should the Insured die while the premium on this Policy is in arrears for a period not exceeding four weeks, the Company will pay the Benefits provided herein, subject to the conditions of the Policy.

" 7th. . . . If this Policy is lapsed for non-payment of premium, it will be revived within one year from the date of lapse upon written application and payment of all arrears, subject to satisfactory evidence of the sound health of the Insured if required by the Company's rules.

" 8th. . . . No person, except the President, one of the Vice-

Presidents or Secretary of the Company, can alter this contract or waive any condition thereof."

It appeared at the trial that the insured died on August 28, 1903, and that the proofs were satisfactory. The weekly premium was paid for the insured by his wife, the plaintiff. She testified that the payment of the weekly premiums was in arrears, the last payment having been made in August but credited on the book referred to in article 5 for July. She also testified that she had made a payment to the defendant's collecting agent, named Sterling, in June which the agent had not credited on the book, and that she had a dispute with him about it, and thereafter the assistant superintendent, named Moody, collected her premiums. The last payment credited on the book was the payment due July 20. The plaintiff testified that the assistant superintendent asked her what the trouble was and she said that Sterling had " cheated " her. After this she paid nine premiums to Moody. The plaintiff also testified on direct examination " that during the time she held the policy there were four or five different times at which she was at least six weeks behind in her payments of premiums." She further testified that two weeks after her husband's death Moody told her he was going to get some money for her, and that he wanted her book and policy, and she gave them to him; later, about September 18 or 19, he called with a check and "another paper" which he laid on the table and said to her, " Sign your name on this," and she did so without seeing what it was. What she signed was a receipt not under seal for fifteen dollars, " which payment is in full for all claims against said Company under policy 12901490," the policy in question. " She further said that she knew the paper she signed was a receipt for the money and that she knew she was receipting for the money. Mr. Moody did not explain the receipt to her nor ask her to read it. At that time she had not been appointed administratrix of her husband's estate." On cross-examination she testified that " at the time subsequent to the husband's death when Mr. Moody had the talk about getting her what he could she knew that the defendant's representative claimed that the policy had lapsed." At this point the defendant offered the receipt in evidence and the plaintiff was asked whether or not she understood that that was all Mr.

Moody could get for her at that or any other time on the policy. She replied " No sir, he didn't state anything, no sir, I didn't understand." " Plaintiff's attorney here cut off the rest of her reply by objecting, defendant's attorney claimed the right to ask her understanding, and the court ruled that she had already answered. On being further asked what she understood that she was getting the fifteen dollars for she said that she didn't understand because it wasn't even half of what she had paid in." There was no evidence of any conversation with Moody as to a compromise. On cross-examination " she said that the payment in dispute was left by her with some one of the children, to be delivered to Sterling when he called. She frequently left money in that way with them when she was going out and on her return would inquire if Sterling had called for his money. . . . Not always I didn't look at the books, because I didn't think it was necessary to look at the books, I trusted the man that was collecting." On re-direct she testified " that she had seven children, the oldest fourteen years old, also that when she went out she generally left the money with Margaret, the oldest child. She sometimes left it with the other children, but the youngest child she ever left money with was ten years old at that time." The daughter Margaret but no other child was called. Margaret was not asked whether the money left with her was paid to Sterling.

The defendant asked for a verdict, which was refused. The judge submitted the case to the jury on the single question whether Mrs. McNicholas made the disputed payment. The jury found for the plaintiff; and the defendant alleged exceptions.

*C. T. Cottrell*, for the defendant.

*A. P. Teele*, for the plaintiff.

LORING, J. [After the foregoing statement of the case.] The plaintiff's contention is that by force of each weekly payment the policy continues in force for the coming week. Consequently, if the disputed payment is to stand, the last payment made was for the premium due July 27, by which the policy was continued in force until August 3, and the policy would not be four weeks in arrears until August 31, three days after the date of the death of the insured. This has not been con-

troverted by the defendant. Nevertheless it contends that as matter of law the defendant should have had a verdict.

1. The defendant first insists on this testimony of the plaintiff "during the time she held the policy there were four or five different times at which she was at least six weeks behind in her payments of premiums," that the policy had as matter of law lapsed before the controversy with Sterling. When the four or five lapses testified to occurred did not appear. It did appear however that all subsequent premiums had been paid except the four or five last ones. The receipt of these subsequent premiums by the company itself after the policy had lapsed would be a waiver of the lapse. *Hodsdon* v. *Guardian Ins. Co.* 97 Mass. 144. *Shea* v. *Massachusetts Benefit Assoc.* 160 Mass. 289. In the case at bar the jury were warranted in finding that the subsequent premiums had reached the company although paid to the company's agents.

2. The next exception is to the admission of a payment not entered on the book agreed upon. The evidence was admitted without any explanation as to why it was not entered in this book. This was wrong. Parties have a right to make an agreement as to the evidence which shall be produced, and such an agreement, when made, will be enforced. It was laid down in *United States* v. *Robeson*, 9 Pet. 319, 327, that "where the parties in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement, must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract, or show that, by time or accident, he is unable to do so." Further if on proof of the fact that it is through the fraud of the defendant's agent that the evidence agreed upon for the payment in question is not forthcoming, we assume (without deciding) that the payment may be otherwise shown. The original error in admitting evidence of this payment was not cured by what subsequently appeared in evidence. The plaintiff testified that she paid the fifteen cents in question to the defendant's agent Sterling, and that she told the assistant superintendent that the agent to whom she said she

made the disputed payment had "cheated" her.   A plaintiff in such a case as that now before us does not make out a case of fraud, accident or mistake by testifying that a payment has been made and then showing that the payment so made is not entered on the book.   The admission of evidence of this disputed payment under these circumstances was wrong, and the exception to it must be sustained.

3. We do not find it necessary to consider whether the second condition authorizes a compromise with the person selected by the company to receive payment, as was decided in *Brennan* v. *Prudential Ins. Co.* 170 Penn. St. 488.   It appears on the uncontradicted testimony of the plaintiff that she signed the receipt without reading it, and we are of opinion that the jury were warranted in finding that the defendant's superintendent fraudulently concealed the nature and contents of it from her, (see *Freedley* v. *French*, 154 Mass. 339 ; *Snow* v. *Alley*, 156 Mass. 193 ; *Bliss* v. *New York Central & Hudson River Railroad*, 160 Mass. 447,) and that she supposed it to be a payment on account, in which case she was not bound to return it before bringing suit.   *Drohan* v. *Lake Shore & Michigan Southern Railway*, 162 Mass. 435.

4. We are of opinion however that there was no evidence that the plaintiff made to the defendant's agent Sterling the payment in dispute between them.   She did not state on her direct examination how this payment was made.   But on cross-examination she testified " that the payment in dispute was left by her with some one of the children, to be delivered to Sterling when he called."   There was no evidence that the fifteen cents in question left with one of her children was paid by the child in question to Sterling.   Only one of the children was put on the stand, and she was not questioned on this point.

*Exceptions sustained.*