MARGARET McNICHOLAS, administratrix, *vs.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Suffolk.    March 12, 1907. — December 3, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Insurance,* Life.    *Agency.    Release.    Accord and Satisfaction.    Fraud.*

In an action by an administratrix on a policy of insurance upon the life of the plaintiff's intestate, who also was her husband, issued in consideration of weekly payments of fifteen cents and containing a provision that payments of premiums " to be recognized by the company must be entered at the time of the payment in the premium receipt book," there was evidence on which it could be found that the plaintiff during the lifetime of her husband made a payment of a premium which was not entered in the book, that thereupon she had a dispute with the regular collector who refused to make the correction and thereafter for a time she made no payment, that the assistant superintendent of the defendant had a conversation with the plaintiff in which he in substance agreed that the

plaintiff was right as to the disputed payment and that the collector was wrong and said that the mistake in failing to enter the payment would be corrected if the plaintiff would resume making payments on the policy, that the plaintiff assented, relied upon his promise to make the correction, and thereupon began to make payments again, making nine payments after that time which were entered properly in the book, but the error of the non-entry of the disputed payment remained uncorrected. It was a condition of the policy that it should lapse if the premiums were in arrears for a period exceeding four weeks. Unless the disputed payment was allowed as of the date when the plaintiff testified that it was made, there had been an interval of more than four weeks before the payment of premiums was resumed, so that, applying the payments in their order, at the time of the death of the insured the premiums would have been in arrears for a period exceeding four weeks. *Held,* that on these facts the jury could find that the plaintiff made a sufficient explanation of the failure to enter the disputed payment in the book, and might rely upon the payment made by her but not entered in the book to keep the policy alive until after the death of the plaintiff's intestate.

The collecting agent of an insurance company whose duty it is to collect small premiums payable weekly under a provision in the policies which requires that the payment of premiums " to be recognized by the company must be entered at the time of the payment in the premium receipt book" has authority to correct errors of entry in the premium receipt book, and an assistant superintendent over the collecting agent has at least as ample power in this respect.

If in an action on a policy of life insurance the defendant puts in evidence a general release signed by the plaintiff alleged to have been given in pursuance of a settlement by which the plaintiff was to receive $15, and shows that the plaintiff accepted a check for that sum, and there is nothing in the terms of the alleged settlement to indicate fraud, the plaintiff may show that the defendant's superintendent fraudulently concealed from her the nature and contents of the paper and that she signed it supposing it to be a receipt for $15 as a part payment on account of her claim, and it is a question for the jury whether the plaintiff accepted the $15 as a compromise of a disputed claim or as a payment on account.

CONTRACT by the administratrix of the estate of Thomas J. McNicholas, upon a policy dated October 9, 1899, insuring the life of the plaintiff's intestate, who also was her husband, for the sum of $201 in consideration of the weekly payment of a premium of fifteen cents. Writ in the Municipal Court of the Roxbury District of the City of Boston dated February 19, 1904.

On appeal to the Superior Court the case first was tried before *Gaskill,* J. At this trial the judge submitted the case to the jury on the single question whether the plaintiff made the disputed payment which is mentioned in the opinion. The jury found for the plaintiff, and exceptions alleged by the defendant were sustained by this court in a decision reported in 191 Mass. 304, on the ground that the plaintiff showed no sufficient reason

for the disputed payment not being entered in the premium book and that there was no evidence for the jury that the plaintiff made the payment in question to the defendant's agent.

Among the conditions of the policy were the following:

"4th. . . . This policy shall be void . . . if the said weekly premium shall not be paid according to the terms hereof.

"5th. . . . Payments [of premiums] to be recognized by the Company must be entered at the time of payment in the premium receipt book belonging with this Policy.

"6th. . . . Should the Insured die while the premium on this Policy is in arrears for a period not exceeding four weeks, the Company will pay the Benefits provided herein, subject to the conditions of the Policy.

"7th. . . . If this Policy is lapsed for non-payment of premium, it will be revived within one year from the date of lapse upon written application and payment of all arrears, subject to satisfactory evidence of the sound health of the Insured if required by the Company's rules.

"8th. . . . No person, except the President, one of the Vice-Presidents or Secretary of the Company, can alter the contract or waive any condition thereof."

The premiums had been in arrears for a period exceeding four weeks unless the disputed payment was allowed as of the date when the plaintiff testified that it was made.

There was a new trial before *Richardson*, J., where evidence was introduced warranting the finding of the facts which are stated in substance in the opinion.

At the close of the evidence the defendant asked for fifteen rulings, of which some were given as requested, some were given with modifications and some were refused. Among the rulings requested by the defendant and refused by the judge were the following:

1. On all the evidence there should be a verdict for the defendant as matter of law.

2. The policy declared on in this case, as matter of law, lapsed before the death of the insured.

13. Even if the plaintiff is not bound by the receipt in this case, she is conclusively bound by her acceptance, retention and use of the check in evidence.

14. There is no evidence for the jury that the disputed payment ever was made.

15. As matter of law and on all the evidence in this case the plaintiff has no right to show any payment of premiums not appearing on the premium receipt book.

The twelfth ruling requested was as follows:

12. There is no evidence of fraud in the settlement made in this case and said settlement is a full and complete bar to the plaintiff's claim.

The judge gave the first part of this ruling, as explained in the opinion, and as to the question of settlement said " That depends upon questions which I leave to you." His instruction on this point is quoted in the opinion.

The jury returned a verdict for the plaintiff in the sum of $215.29 ; and the defendant alleged exceptions.'

*C. T. Cottrell,* for the defendant.

*A. P. Teele,* for the plaintiff.

RUGG, J. The exceptions as to the admission of evidence respecting the payment not entered upon the " premium receipt book," and as to the policy having lapsed thereby, must be overruled. The plaintiff testified that she had made a payment, which was not entered on the book ; that she thereupon had a dispute with one Sterling, the regular collector, who refused to make the correction, and thereafter for a time she made no payment ; then one Moody, the assistant superintendent of the defendant at its Roxbury office, called and asked her " why she was not paying," to which it was replied that she and Sterling had " had a fuss and he had cheated her out of a week's insurance " ; that Moody said " You go ahead and pay your insurance and I will make it all right, and what he cheated you out I will make it all right, and you need not pay what you are in arrears until you have it good and ready." To her statement that she thought she was too far behind he said he would " guarantee it." She thereupon paid the premium to Moody, who continued to collect other premiums until her husband's death. The plaintiff also testified that ordinarily she paid no attention to what was written in the book by the agent, for she trusted him and did not think he would do anything wrong. This is action such as a reasonably prudent and honest insured might

take.  As soon as she discovered that the payment which she testified to having made was not properly entered, she remonstrated with the agent, who refused to make the correction.  No entry of payment of premiums could be made in the book except by the agent of the company.  The plaintiff without resort to the courts could do nothing more to assert her rights.  She paid no more premiums, and by her action took the position that she would have nothing further to do with the defendant under this contract.  The substance of the conference with Moody may have been found to be that he agreed that the plaintiff was right as to the disputed payment and the agent was wrong, and that the mistake in the failure to enter this payment in the book would be corrected, provided she would resume making payments on the policy, and that the plaintiff assented to this suggestion, relied upon his promise to make the correction, and thereupon began to make payments again.  The authority of the collecting agent goes far enough to enable him to correct errors of entry in the premium receipt book.  Moody being an agent over Sterling had at least as ample power in this respect as the ordinary agent.  She made to Moody nine payments after this time, all of which were duly entered upon the book.  But the original error of non-entry of the disputed payment made to Sterling was not corrected in the " premium receipt book."

From these circumstances it was competent for the jury to find a sufficient explanation for the failure of all the payments to appear on the book.  They go beyond a mere showing that a payment had been made which was not entered in the book.  *McNicholas* v. *Prudential Ins. Co. of America*, 191 Mass. 304, 309.  It was a fraud practised by the defendant on the plaintiff to receive her money in consequence of its promise to recognize the truth of her contention as to the disputed payment and to correct the error, and, having led her to believe that she had a valid contract, then to refuse to perform the agreement by which she was induced to make the payments.  The defendant cannot take the plaintiff's money paid in consideration of its promise to correct an entry of payment, and then repudiate liability because of a clause in the contract of insurance that payments of premiums " to be recognized by the company must be entered at the time of the payment in the

premium receipt book." To interpose such a defence involves the fraud of its own agent. The defendant cannot intrench itself behind such a contract as an impregnable fortress against the fraud of itself or its agents. There is nothing inconsistent with this result in the previous decision of this case, nor in *United States* v. *Robeson,* 9 Pet. 319, 327, relied upon by the defendant. *Hamilton* v. *Liverpool Ins. Co.* 136 U. S. 242, 455. The payment which the plaintiff testified that she made to the defendant and which was not entered in the book might have been found by the jury to have kept the policy alive until after the death of the plaintiff's intestate. No error is disclosed, either in the rulings or refusals to rule on this branch of the case.

2. The trial judge at the request of the defendant ruled that "there is no evidence of fraud in the settlement made in this case" but also instructed the jury that "if there was a dispute between the parties and she knew at the time that there was a compromise, a settlement for a less sum than she claimed and the defendant was guilty of no fraud or misrepresentation and took no advantage of her, the settlement is binding, but if there was no dispute or if she did not know the effect of the papers and she was misled in any way by the situation or anything said, or any misrepresentation, the jury may find the settlement not binding on her." We understand this to mean that there was nothing in the terms of the alleged settlement to show fraud but that the question as to whether "the defendant's superintendent fraudulently concealed the nature and contents" of the receipt from the plaintiff was left to the jury. This was in accordance with the former decision, 191 Mass. at p. 309.

The evidence of the plaintiff upon the present record is slightly less favorable to her claim than that disclosed in her earlier bill of exceptions, but as now presented she testified that Moody told her at the time the $15 was paid "that fifteen dollars was the best he could get for her just then." He also had "two little slips of paper," and said to her "I want you to sign your name on this." Thereupon she started to sign the check and he told her to sign the other, not reading it himself nor asking her to read it, and he took away with him the slip signed (which afterwards was identified as the release) and never told her how much money she was to get nor mentioned paid up value at all

and she thought the $15 was "a part payment." He previously had called for her policy and the book, saying that "he had good news for her," and, at the same time making, and procuring her signature to the proof of death of the insured. Although there are expressions in other parts of her testimony indicating slightly more frankness on the part of Moody, nevertheless the circumstances are such as to make it a question of fact whether there was not such fraudulent active and passive misrepresentation by the defendant's agent as to relieve the plaintiff from the effect of the release. Apart from the release, there was sufficient evidence to make it a question for the jury whether the plaintiff accepted the $15 as a compromise of a disputed claim or as a payment on account. No error appears as to the way in which the trial court dealt with this branch of the case.

In the opinion of a majority of the court the case was properly submitted to the jury.

*Exceptions overruled.*