JOSEPH BRUZAS *vs.* PEERLESS CASUALTY COMPANY.

Cumberland.   Opinion December 18, 1913.

*Accident.   Disability.   Exceptions.   Indemnity.   Insurance.   Notices.   Policy. Physician.   Premium.   Waiver.*

In an action of assumpsit on a policy of accident and illness indemnity, it appeared that the plaintiff took out his policy on January 5, 1911, covering the period until February 1, 1911, and paid the premium therefor in advance; that subsequent premiums were due and payable monthly in advance on the first day of each month; that the plaintiff continued to make these monthly payments, sometimes in advance, but often when overdue, the premium for June being paid on May 8; for July on July 24; for August on August 5; for September on September 5; for October on October 3; and for November, in advance on October 29.

The plaintiff fell ill and ceased work on June 24. He consulted a physician for the first time on July 5. From that date until October 1, he was necessarily and continuously confined within the house and regularly visited by a legally qualified physician at least every seven days. From October 1, he was convalescent but unable to work.

*Held:*

1.  That for the period between June 24 and July 1, the plaintiff is not entitled to recover because the condition in the policy that the assessed must be "necessarily and continuously confined within the house" was not fully met; and for the further reason that he was not "therein regularly visited by a legally qualified physician," as required by the policy.

2.  That for the period from July 1 to July 5 the plaintiff cannot recover because of the same lack of medical attendance.

3. That for the period from July 5 to July 24, the plaintiff can recover full indemnity at the rate of $25 per month, even though the renewal premium, due July 1, was not paid until July 24. The company waived the condition of forfeiture for non-payment of premium in advance by accepting and retaining it when overdue. It could not accept and retain the premium and still be free from liability.

The provision, "nor shall the acceptance of any overdue premium or premiums constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in the contract," refers to a waiver affecting the future and not the past.

4. That for the period from July 24 to October 1, the plaintiff is entitled to full indemnity.

The provision "if the payment of renewal premium shall be made after the expiration of this policy or of the last renewal receipt, neither the assured nor the beneficiary will be entitled to recovery . . . for any illness originating before the expiration of thirty days after the date of such renewal payment," does not apply because the plaintiff's illness did not originate within thirty days after the payment but many days before.

5. That for the period from October 1 to December 1, the plaintiff is entitled to half indemnity, at the rate of twelve dollars and fifty cents per month.

On exceptions by the defendant. Exceptions overruled.

This is an action of assumpsit on a policy of accident and illness indemnity insurance, heard before the Judge of the Superior Court of Cumberland County without a jury on an agreed statement of facts. This policy was issued to the defendant on January 5, 1911, in consideration of one dollar and seventy-five cents, paid by him, insuring him against accident and illness until February 1st following, and for such further period as premiums should be made thereon in accordance with the terms of the policy. Plea, general issue. The Judge, before whom the case was heard, found for the plaintiff in the sum of $71.00, and the defendant excepted.

The case is stated in the opinion.

*Connellan & Connellan,* for plaintiff.

*Charles G. Keene,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

CORNISH, J. Action of assumpsit on a policy of accident and illness indemnity insurance.

On January 5, 1911, the defendant issued a policy to the plaintiff insuring him, in consideration of a premium of one dollar and seventy-five cents paid, against accident and illness until February 1st, following, and for such further period as premium payments should be made thereon in accordance with the terms of the policy. These premium payments were payable monthly in advance and were due on the first day of each month for the month ensuing.

The plaintiff continued to make the monthly payments, sometimes in advance but often when overdue. The renewal premium due June 1, was paid in advance on May 8; that for July, on July 24; for August on August 5; for September, on September 5; for October on October 3; and for November, in advance, on October 29.

According to the agreed statement of facts, "The plaintiff on the 24th day of June 1912, became ill and ceased work, believing that a rest would restore his strength, not suffering any great amount of pain, but being weak. He rested until the fifth day of July, A. D. 1912, at which time his condition not improving, he consulted a physician. From this date until October first, 1912, he was necessarily and continuously confined within the house and therein regularly visited by a legally qualified physician at least every seven days. From the first day of October, 1912, to the first day of December, 1912, while convalescent, he was unable to work and not continuously confined to the house, entitling him to partial benefits if the referee should find this action can be maintained. The case was diagnosed as walking typhoid fever. The plaintiff gave all proper notices and affirmative proof to the defendant as provided for by the policy, and filed with the defendant at proper times all certificates, notices, reports, etc., required under the terms of the policy. The plaintiff was wholly and continuously disabled, suffering from walking typhoid fever, a disease which requires regular attendance by a physician, from the twenty-fourth (24) day of June, A. D. 1912, to the fifth (5) day of July, A. D. 1912; but the said plaintiff was not attended by any physician from said twenty-fourth (24) day of June, to said (5) day of July, A. D. 1912."

Upon this agreed statement the presiding Judge, who heard the case without the intervention of a jury, rendered judgment in favor of the plaintiff in the sum of seventy-one dollars and the defendant alleged exceptions.

It being uncontroverted that the plaintiff took out his policy on January 5 and made payment thereafter of each renewal premium for a period of ten months, although not always on the prescribed date, in other words paid premiums for insurance from January 5 to December 1, all of which sums the defendant accepted, retained and still retains; it being also admitted that the plaintiff fell sick on June 24th and was "necessarily and continuously confined within the house and therein regularly visited by a legally qualified physician from July 5 until October 1," and was convalescing but unable to work from October 1, to December 1, it would seem as if he should be entitled to some of the benefits for which he was paying, and the inquiry naturally arises, what can be the grounds on which the company resists all liability?

The defendant divides the whole term of the plaintiff's disability, June 24, to December 1, into five component parts, and discusses each separately. We will follow the same order.

1. PERIOD FROM JUNE 24, TO JULY 1.

The renewal premium for the entire month of June having been paid in advance on May 8, the policy was admittedly in force on the day the plaintiff fell sick, June 24. The agreed statement recites that during this period of seven days the plaintiff "was wholly and continuously disabled, suffering from walking typhoid fever," while the condition of the policy, Article 13, is that he must be "necessarily and continuously confined within the house." The condition of the policy is not fully met, and the agreed statement does not rise to the policy requirement, which is a condition precedent to the right of recovery. *Dunning* v. *Mass. Mut. Acc. Assn.*, 99 Maine, 390.

Moreover, the policy further requires, not only necessary and continuous confinement within the house, but also "and therein regularly visited by a legally qualified physician" and regular visitation is defined by another clause in the policy to be "at least once every seven days." It is conceded that a physician was not called until July 5, and therefore this condition precedent was not complied with. For these two reasons, the plaintiff cannot recover for this period, June 24 to July 1.

2.   PERIOD FROM JULY 1, TO JULY 5.

No physician was in attendance during this period, and for that reason as already stated the plaintiff is barred from recovery.

3.   PERIOD FROM JULY 5, TO JULY 24.

During this time the requirement in regard to attending physician was complied with, but the defendant contends that the insurance was not in force because the renewal premium due and payable July 1, was not paid until July 24, and the policy had thereby been forfeited. This contention cannot be sustained under the facts in this case. The company not only accepted and retained this premium when overdue, but in like manner accepted and retained overdue premiums for the months of August, September and October, and then on October 29, accepted the advance premium for the month of November. This constituted a waiver on the part of the company so that the policy was kept continuously in force. The company having full knowledge of the facts, had the option either to treat the policy as lapsed and decline further premiums or to accept the overdue premium and thereby treat it as subsisting. It could not accept and retain the premium and still be freed from liability. The premiums it retains must be on living not on dead policies. The lapse of a policy for non-payment of premiums is waived by the insurer's acceptance of either the overdue or subsequent premiums paid under the policy. This is settled law. *Lally* v. *Ins. Co.,* 75 N. H., 188; *White* v. *McPeck,* 185 Mass., 451; *McNicholas* v. *Ins. Co.,* 191 Mass., 304; *Williams* v. *Relief Assn.,* 89 Maine, 158.

It is true that the policy contains this provision, "Nor shall the acceptance of any overdue premium or premiums constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in the contract." This in no way conflicts with the rule just stated. The acceptance of overdue premiums does not of itself work a waiver of future prompt payments, but it is a waiver of the condition so far, and so far only, as covered by the overdue payments themselves. It affects and must affect the past, but not necessarily the future. *Crossman* v. *Mass. Benefit Assn.,* 143 Mass., 435. This is the true construction and limitation of this clause in the policy. To permit it to go further would be contrary to public policy in allowing an insurance company to receive the money of its patrons and to give them nothing in return, thus perpetrating a fraud. It follows that this policy was valid from

July 5 to July 24, and the plaintiff is entitled to full indemnity at the rate of twenty-five dollars per month during that time.

4.   PERIOD FROM JULY 24 TO OCTOBER 1.

For the reasons just stated, this policy was in force during this entire time, the acceptance of the several premiums having worked a waiver of the forfeiture.

But the defendant now calls attention to another condition, which reads as follows, "The acceptance of any renewal premium shall be optional with the company, and if the payment of renewal premium shall be made after the expiration of this policy or of the last renewal receipt, neither the assured nor the beneficiary will be entitled to recovery  .  .  .   for any illness originating before the expiration of thirty days after the date of such renewal payment." The first sentence of this condition is of general application and gives the company the right to terminate the insurance at the expiration of any premium period.  That point is not involved here.

Under the remainder of the provision the defendant argues that as the illness from which the plaintiff was suffering not only originated before the expiration of thirty days after the date of the renewal payment, July 24, but actually originated on June 24 which was thirty days before the date of the renewal payment, the plaintiff is precluded from recovering.  This contention is in effect that if the illness shall be contracted within thirty days after the delayed renewal premium is paid, or had originated at any time previous to such payment, yet the company is relieved.  During all this time the insured may have been making his payments, and have been laboring under the conviction that he was insured, and yet the subsequent acceptance of an overdue premium by the company would, on this theory, nullify it all.  This, of course, cannot be.

Nor is this the fair import of the language.  It is, "any illness originating before the expiration of thirty days after the date of such renewal payment."  That is, within thirty days after such payment.  The date of payment is the initial point of reckoning, and the contemplated period is thirty days subsequent thereto.  The past is not taken into consideration.  This is the construction which would be placed upon this condition giving the words their ordinary signification.  If, as the defendant contends, such was not the inten-

tion of the company but it was designed to embrace a period prior to the payment as well as subsequent thereto, the company has failed to make that intention clear. The most that could be claimed is that the language is ambiguous and if so it falls within the familiar rule of construction that it shall be taken most strongly against the insurer, whose language it is. Applying this construction, it will be readily seen that this clause in no way affects the policy. The illness did not originate within thirty days after July 24, the date of the delayed renewal payment but had already originated on June 24, thirty days before. That being so, the liability of the company can not be avoided by the clause in question.

It is to be further observed that when the company accepted the overdue payment on July 24, it must already have been informed of the plaintiff's illness, because he fell ill on June 24, and under another provision of the policy it was his duty to give written notice to the company of such illness, within twenty days from the beginning of the illness. The agreed statement does not show the precise day on which notice was given, but it doubtless was prior to the expiration of that twenty days, otherwise that defence would have been set up in this case. Even the extreme limit of twenty days viz. July 14, was ten days prior to the acceptance by the company of this overdue premium, so that it accepted the premium having full knowledge of his illness. Under these circumstances it might with reason be held that it waived this provision of the policy which it now invokes. The defendant is plainly liable for the full indemnity between July 24 and October 1.

5. PERIOD FROM OCTOBER 1, TO DECEMBER 1.

During the period of convalescence, the plaintiff was entitled to half indemnity unless some tenable defence prevents. The only objection made to this is the one already discussed under item 4. The defendant seeks to project the attempted defense to the period of total disability forward into the period of convalescence. Had it been good there, it would have been good here; but having failed there, it also fails here.

Our conclusion, therefore, is that the plaintiff is entitled to recover at the rate of twenty-five dollars per month from July 5 to October 1, the period of total confinement under a physician's care; and at the rate of twelve dollars and fifty cents per month from October 1,

to December 1, the period of convalescence; a total of ninety-seven dollars and fifty cents. The amount found due by the presiding Judge being only seventy-one dollars, the exceptions of the defendant cannot be sustained, as the ruling was not prejudicial.

*Exceptions overruled.*