ARETAS E. STEARNS, TRUSTEE

*vs.*

CHARLOTTE J. KERR THOMPSON, ET ALS.

Cumberland.     Opinion, September 4, 1936.

*Ralph T. Parker,* for Rumford Falls Trust Company.
*Freeman & Freeman,* for Charlotte J. Kerr Thompson.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Hudson, J.    This is a bill in equity for partition of certain real estate in the Town of Rumford, brought by the Trustee in bankruptcy of one James H. Kerr against the bankrupt's daughter, Charlotte J. Kerr Thompson, his present wife, Alice F. Kerr, and the Rumford Falls Trust Company.

To be decided is whether or not the daughter, heir at law of her mother, Fannie M. Kerr, the former wife, is estopped to defend upon the title her mother had, by reason of the fact that while owner her mother signed a mortgage of it, given by her husband before his bankruptcy to the Rumford Falls Trust Company, containing full covenants and this testimonium clause, viz.:

"... I the said grantor" (meaning James H. Kerr, the husband) "and Fannie M. Kerr wife of the said grantor hereby agreeing to the terms of this mortgage, and in token of her relinquishment of all right of dower and all other rights in the premises, have hereunto set our hands and seals this twenty-second day of July in the year of our Lord one thousand nine hundred and seven."

Mr. Kerr had conveyed this real estate to his wife, Fannie, by deed duly recorded on June 15, 1898. No question is raised as to the validity of her title at that time. On July 22, 1907, although without title to the real estate, he gave a first mortgage of it to the Rumford Falls Trust Company, the testimonium clause of which is as above set forth. Two years later, he gave a second mortgage to the same grantee with an identical testimonium clause. These mortgages have been foreclosed and the equity of redemption in each

has expired. Fannie M. Kerr died in April, 1910, intestate, leaving her husband, and Charlotte as her only child. The complainant claims title to one-third of the real estate in common and undivided and the daughter the other two-thirds as an inheritance from her mother, while the Rumford Falls Trust Company, the mortgagee, claims title to the whole. That the title of the one-third in common and undivided that came to Mr. Kerr upon the death of his wife vested at once in his former grantee, the Rumford Falls Trust Company, there can be no question. *Bennett* v. *Davis*, 90 Me., 457, 460, 38 A., 372, and previous Maine cases cited therein.

As to the two-thirds, the daughter, not taking by purchase, has only such title as her mother had at the time of her death. Did she by signing the mortgages estop herself from asserting title as against the mortgagee?

It is not claimed that the mortgagee had actual knowledge of title in Mrs. Kerr. Constructive knowledge by reason of the recording of the deed to Mrs. Kerr does not necessarily control the situation. This Court has said that "the mere fact that the truth can be ascertained by an examination of the records does not prevent the operation of the estoppel" in a case where there is a duty to speak, as where inquiries are made; or instead of merely remaining silent, some positive affirmative act is performed which would actually have the effect of misleading and deceiving the grantee.

> "While silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad and doubtful title would be a positive fraud that should bar and estop the party." *Rogers* v. *Portland & Brunswick Street Railway*, 100 Me., 86, 94, 60 A., 713, 716.

Then what was the situation here? The notes secured by these mortgages were signed by Mrs. Kerr as well as by her husband and were as much her obligation, so far as the Trust Company was concerned, as his. She knew that she held the sole title to this real estate and therefore that he had no legal right to convey it in mortgage or otherwise. She knew she was not signing these mortgages as a grantor. She withheld knowledge from the Trust Company that she held the title, stood by and permitted her husband without title to mortgage it to secure not only his but her indebt-

edness. She must have had full knowledge of the facts set forth in the mortgages, for in each she said that she agreed to its terms. Not signing as a grantor, she did not convey her title by grant. Nevertheless, as against her, while living, and upon her death as against her daughter as her heir at law, Mrs. Kerr's title passed by estoppel to the mortgagee.

The daughter's counsel relies on *Burnham* v. *Wing, et al.*, 123 Me., 237, 122 A., 577. In that case the sole question was "whether James F. Burnham conveyed his interest in this estate obtained by deed from his wife when he signed his wife's deed to the plaintiff so that in effect it became their joint deed." The Court said, "We think not." (See page 239.) The language of the testimonium clause in the Burnham deed was as follows:

"I the said Lucy A. Burnham and J. F. Burnham, husband of the said Lucy A. joining in this deed as grantor and relinquishing and conveying all rights by descent and all other rights in the above described premises, etc. . . ."

At the beginning of the deed, Mr. Burnham was not named as a grantor. The Court held that he did not convey his title but simply released his rights by descent. It was held that the words "all other rights in the above described premises" referred simply to his right of descent, formerly a right known as a right of curtesy, and that they did not refer in any way to any other title held by Mr. Burnham. Consequently, there was no misrepresentation as a foundation for the doctrine of estoppel. Title by estoppel was not discussed. Only considered was the passing of title by grant.

Another distinction is that in the deed in that case there was no such assertion as here in the words "hereby agreeing to the terms of this mortgage."

Almost a hundred years ago, this Court held that "if the owner of land knowingly stands by, and suffers another to purchase it and expend his money thereon, under an erroneous impression that the legal title is acquired thereby, without making his own title known, he shall not afterwards be permitted to exercise his legal right against such purchaser," and adopted this principle as set forth in a quotation from 1 Johns. R. Ch. R. 344:

"There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively by looking on, suffers another to purchase, and expend money on land, under an erroneous opinion of title, without making it known, he shall not afterwards be permitted to exercise his legal right against such person." *Hatch* v. *Kimball*, 16 Me., 146, 149.

In *Colby* v. *Norton, et al.*, 19 Me., 412, 418, Chief Justice Weston said:

"If it should be said the plaintiff acted under a mistake, there are cases, where ignorance of title will not excuse a party; 'for if he actually misleads a purchaser by his own representations, though innocently, the maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer, who, by his own acts, occasioned the confidence and the loss.'"

Chief Justice Whitman, in *Rangeley* v. *Spring*, 21 Me., 130, on page 137, said:

". . . and so if a man will stand by and see another purchase real estate, believing that he is acquiring a good title thereto, and gives no intimation that the land is his, he shall not afterwards be allowed to make claim thereto." Also see *Matthews, In Equity* v. *Light*, 32 Me., 305.

In *Chapman, et al.* v. *Pingree*, 67 Me., 198, the same principle was enunciated. In that case, the holder of the title, "connusant of their transactions," witnessed the execution of a deed of it by one without title. The Court held that he sat by and knowingly suffered the conveyance to be made under an impression and belief upon the the part of the purchaser that the legal title thereby passed and that he did not make known his own title. It then concluded that the law will not permit him to be heard in setting up his claim under such circumstances.

In *Hill* v. *McNichol, Admr.*, 80 Me., 209, 13 A., 883, 887, Chief Justice Peters said that "as a general remark" by a judge in charg-

ing the jury the following language was a correct statement of law:

> "It is a general rule of law that when a person sees another conveying property which belongs to himself instead of to the person conveying, and makes no dissent when he should dissent, he is estopped from making a claim."

In *Martin* v. *Maine Central Railroad Company*, 83 Me., 100, on page 106, 21 A., 740, 742, the following language is employed:

> "Thus, while it is well established that the owner of land may by his conduct preclude himself from asserting his legal title, 'it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles, if they were allowed to be affected by parol evidence. It should appear that there was either actual fraud, or fault or negligence equivalent to fraud on his part in concealing his title, or that he was silent when the circumstances would impel an honest man to speak, or that there was such actual intervention on his part as in *Storrs* v. *Barker,* supra.' "

We should say that counsel for the daughter in his able argument stresses the language of Justice Cornish in *Burnham* v. *Wing,* supra, on page 240, wherein the Justice said:

> "To hold that those intending to bar rights of descent are also grantors would unsettle a large number of titles in this State" and noted the fact that "only the parties named as grantors in the beginning of the deed are so indexed" in the Registry of Deeds.

But that language was spoken of a title passing by grant and not by estoppel. Ability to discover true title from an examination of records should not enure to the benefit of one who by fraud, actual or constructive, has worked an injustice upon an innocent purchaser.

Mrs. Kerr's recitals in the mortgages were sufficiently precise,

clear and unambiguous with relation to material facts to satisfy the requirements of the law of estoppel.

"Where these requirements are met the law will not permit one, who has in a solemn manner admitted a matter to be true, to allege it to be false." *Doten* v. *Bartlett,* 107 Me., 351, 355, 356, 78 A., 456.

Although named as a party, it is not contended that the present wife, Alice F. Kerr, has any interest in this property.

For reasons stated, we consider that the mortgagee holds the title to all of the real estate of which partition is sought and that this bill was properly dismissed by the Justice below.

*Appeal dismissed.*
*Decree below affirmed.*