Millard F. PALMER, Administrator of the
Estate of Barbara S. Palmer

v.

NEWPORT TRUST CO. et al.

Supreme Judicial Court of Maine.

Aug. 29, 1968.

them, which it will appear did not affect the result, entered their appeals from the decision with which they concur in part. The parties are in substantial agreement upon the facts as follows:

Edward Stern, Bangor, for plaintiff.

Richard J. Dubord, Waterville, B. M. Siciliano, Dexter, John Ballou, Arnold L. Veague, Bangor, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY and MARDEN, JJ.

WILLIAMSON, Chief Justice.

This is an action by the plaintiff, administrator of the Estate of Mrs. Barbara S. Palmer, against the defendant, Newport Trust Co., (the Bank), for damages arising from failure to provide coverage on the life of plaintiff's intestate under group life insurance. While denying its own liability, the Bank as a third party plaintiff seeks to place liability, if any, on the third party defendants, Old Republic Life Insurance Company (Old Republic) and Insurance City Life Co., (City Life) or either of them, which it will appear were insurers under group life insurance contracts.

The court, sitting without a jury, entered judgment for the Bank and for the third party defendant insurance companies. The court said:

"From the evidence presented in this case I find that neither insurance company had any obligations to Mrs. Palmer at the time she died as her default had terminated the contract as to her and the evidence does not show that this was in any way through the fault of the bank."

In his appeal the plaintiff contends, first, that the Bank was the agent of the insurance companies, and secondly, that the Bank in any event was estopped from asserting that it was under no liability to him. The insurance companies, in light of plaintiff's appeal and certain findings with respect to

In July, 1963 Mrs. Palmer made a real estate mortgage loan with the Bank. At that time the Bank was named as creditor in a group life insurance policy with Old Republic. When the loan was made the Bank issued to Mrs. Palmer a certificate of life insurance in the amount of $5,000.00 under the group policy, running for one year. The arrangement called for Mrs. Palmer paying monthly to the Bank a mortgage payment and the premium on her insurance. The Bank in turn remitted premiums covering its customers to the Harmon Agency, General Agent for Old Republic, which in turn remitted the net premiums to Old Republic after deducting their commission. The Old Republic policy contained no suicide clause, so-called.

In November, 1963 Old Republic notified the Bank that it was cancelling its policy effective January 1, 1964 under the terms thereof. The letter of termination indicated that insurance written through 1963 would remain in force until the termination date. In the meantime the Harmon Agency sought another company to take over the group insurance of the Bank, as well as that of several other banks to whom it had sold Old Republic contracts. The Agency also represented the defendant City Life.

In late 1963 it was represented to an officer of the Bank that City Life would take over the existing Old Republic coverage of individuals. Beginning January 1, 1964 all premiums remitted by the Bank to the Harmon Agency were paid to City Life.

City Life issued a group master contract to the Bank on February 3, 1964. The policy contained a suicide provision, so-called, denying recovery on death by suicide. On February 8, 1964 Mrs. Palmer committed suicide. At no time did the Bank notify the insured of cancellation of the Old Re-

public contract or substitution of the City Life contract.

Both policies contained provisions to the effect that if the underlying obligation of the debtor to the Bank became in default, as defined in the policy, the insurance relating to the debtor was to be automatically terminated. The Old Republic contract provided termination in the event the debtor was 60 days in default in his payments to the Bank.

At the time of Mrs. Palmer's death in February, 1964 she had made no payments on the obligations to the Bank since September, 1963. Accordingly the coverage on her life in terms had been automatically terminated.

The Bank during the period from July, 1963 to the death of Mrs. Palmer caused the monthly premium on the policy to be paid, first to the Old Republic and subsequently to City Life. Mrs. Palmer near the end of 1963 and after termination of the coverage, repaid the Bank the amount so remitted to the insurance company agent. Thus it appears that the Bank did not know that the policy in the Old Republic covering Mrs. Palmer had terminated, and it did not so inform the insurance company. Likewise, after January 1, 1964 the Bank considered that Mrs. Palmer was covered under the City Life contract.

In our view the plaintiff is not entitled to recover from the Bank on either of the grounds asserted by him. First: the Bank in collecting and remitting the monthly premiums on the Old Republic policies covering its customers, as here Mrs. Palmer, acted as agent for the insured and not for the insurer. As a matter of service to its customers and also under the provisions of the master policy issued by the insurer it gathered together the premiums and remitted them to the insurance agency. Thus it was unnecessary for the insurer to deal directly with the Bank's customers, as here the plaintiff.

Courts are not in accord on the proposition of whether under a group policy the employer, for example, as here the Bank, is agent for the insurer or for the employees or customers who are the beneficiaries of the insurance. The better view, in our opinion, is that the insurance company stands on the one side and the holder of the group policy and the beneficiaries thereunder on the other. In other words, the holder of the group policy acts for those beneficially insured and not for the insurer. It follows, therefore, that the Bank was agent for the insured Mrs. Palmer in remitting the premium to the Harmon Agency, the agent of Old Republic, and later of City Life. It is as though Mrs. Palmer had made the payments directly to the Harmon Agency. The Bank created no additional liability to the insured by reason of payment to the Harmon Agency in what turned out to be a mistaken view that Mrs. Palmer was insured. Agent of insured, not of insurer: Duval v. Metropolitan Life Ins. Co., 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276 (1927); Layman v. Continental Assurance Company, 416 Pa. 155, 205 A.2d 93 (1964); Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937); Hroblak v. Metropolitan Life Ins. Co. (Ohio C.A.) 79 N.E. 2d 360 (1947); Clement v. Koch, 259 N.C. 122, 130 S.E.2d 65 (1963); Mason's Adm'x v. Prudential Ins. Co. of America, 291 Ky. 347, 164 S.W.2d 386 (1942); Rivers v. State Capital Life Ins. Co., 245 N.C. 461, 96 S.E.2d 431, 68 A.L.R.2d 205 (1957); Agent of insurer: Elfstrom v. New York Life Ins. Co., 63 Cal.Rptr. 35, 432 P.2d 731, 736; General: 1 Appleman Insurance, Sec. 43 (1965 ed.).

The insurer in accepting late payment of premiums without question waived any right to consider the policy terminated or cancelled for that reason. Bruzas v. Peerless Cas. Co., 111 Me. 308, 89 A. 199 (1913). A waiver from late payment follows as a matter of course, but this does not include waiver of reasons for terminating the contract not otherwise known

to the insurer. Thus here the fact of default by the insured in meeting the terms of the mortgage payments for over 60 days was a fact known to the Bank but not known to the insurer under the methods by which the business was conducted. The Bank gave to the insurer a list of the policy holders and the payment for their premiums. The insurer had no reason to know that the particular policy had terminated under the plain provisions thereof.

The certificate entitled "Insurance Information" issued by the Bank to Mrs. Palmer certified that she was insured in the amount and for the terms specified under the group life policy with Old Republic and further, that "such insurance is subject to all of the provisions and conditions of said policy." The insurance was payable first, to discharge the indebtedness of Mrs. Palmer to the Bank, and second, to her estate as second beneficiary.

The Old Republic policy provides as follows:

## "TERMINATION OF INDIVIDUAL INSURANCE

The insurance on a debtor shall automatically terminate if any of the following events occur:

(a) the indebtedness is discharged;

(b) the indebtedness is transferred to another debtor;

(c) this policy terminates, or

(d) any one payment toward the discharge of the indebtedness becomes more than sixty days past due;

(e) the collateral is repossessed."

The City Life policy has substantially like provisions. The City Life policy with reference to suicide reads:

"If the death of the Debtor shall be caused by suicide, while sane or insane, within two years of the effective date of his insurance, the liability of the Company shall be limited to the return of all premiums paid by the Debtor."

The plaintiff seeks to place liability upon the Bank by reason of its conduct toward the plaintiff's intestate within the doctrine of estoppel. Our court has said:

"Estoppel is a rule of law which prevents a party from asserting his rights when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth. His conduct need not be characterized by an actual intent to mislead or to deceive. His acts, declarations or silence must be of such a character as to have the natural effect of influencing the person to whom it is addressed to do or not to do to his detriment which he would not otherwise have done."

Holt v. New England Tel. & Tel. Co., 110 Me. 10, 12, 85 A. 159 (1912); Stearns v. Kern, 134 Me. 352, 186 A. 800 (1936); Rogers v. Street Railway, 100 Me. 86, 60 A. 713, 70 L.R.A. 574 (1905); B & M Railroad v. Hannaford Bros., et al. 144 Me. 306, 68 A.2d 1 (1949).

We find nothing in the record to compel the conclusion that the Bank was under an obligation to inform the plaintiff of the termination of insurance on a 60-day default in making required loan payment. Lineberger v. Security Life & Trust Co. et al., 245 N.C. 166, 95 S.E.2d 501, 68 A.L.R. 2d 1. No action by the Bank made after the policy had been so terminated could have restored to Mrs. Palmer the benefits of the insurance.

The payment of premium after the due date by the Bank and the reimbursement to the Bank by the plaintiff's intestate do not in themselves establish that the Bank was agent for the insurer and thus in a position to waive conditions of the policy. As we have seen, the Bank was acting for the insured.

The action by the plaintiff is against the defendant Bank, and the Bank alone. Un-

less the Bank should be held liable there would be no reason whatsoever to place liability in this action upon the insurance companies as third party defendants. Issues such as, for example, whether the Old Republic coverage continued for one year and therefore after the termination of the master policy, or whether City Life in taking over the Old Republic liabilities could not take advantage of the suicide clause are not decisive in the case. The Old Republic policy covering Mrs. Palmer was properly held to have been terminated before the end of 1963. There was, therefore, no coverage continued or created when City Life took the place of Old Republic as the insurer.

Neither Old Republic nor City Life has any reason to retain premiums paid by error on the account of Mrs. Palmer. So, also, the Bank had no reason to charge Mrs. Palmer for premiums paid on her account for insurance which the bank should have known had been terminated. The judgment, however, goes only to the denial of liability of the Bank for loss from failure to provide coverage on the life of Mrs. Palmer.

The entry will be:

Appeals denied.

DUFRESNE and WEATHERBEE, JJ., did not sit.