NIKOLAS KUKURUZA *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Suffolk.    November 12, 1930. — June 24, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, & FIELD, JJ.

*Insurance,* Life: lapse, reinstatement.   *Waiver.   Estoppel.*

Under a policy of life insurance providing that the payment of any premium should not continue the policy in force beyond the date when the next premium became due, except for a period of grace, the continuance of the company's obligation under the policy was conditional upon the payment of premiums as provided therein, and no affirmative action by the company was necessary to terminate the corresponding rights of the insured under the policy upon default in the payment of a premium beyond the period of grace.

No duty on the part of the insurance company to notify the insured of a lapse of the policy above described could be inferred from its provisions or from the circumstances.

The circumstance, that an agent of the insurance company above described called at the home of the insured to collect the premiums as they became due did not warrant an inference that the company was required to send an agent for that purpose.

The policy above described provided that it might be reinstated after default "upon production of evidence of insurability satisfactory" to the company and payment of premiums in arrears.  The insured was a woman, and the beneficiary was her husband.  In an action upon the policy after her death, there was evidence that the policy was reinstated on a certificate of insurability, purporting to be signed by the insured, wherein it was stated that she requested the defendant "to reinstate said policy . . . upon condition of the truth of the following statements and agreements," and certified that she was "in good health" and "during the time . . . since the premium . . . in default became due" she had "had no injury, ailment, illness or disease, nor symptoms of such" nor had she "consulted a physician." The plaintiff admitted that he took his wife to a hospital for mental trouble before the premium in default was paid.  There was no affirmative evidence of the truth of the statements in the certificate.  There also was evidence that the defendant knew of the woman's having gone to the hospital when it accepted said premiums.  *Held,* that

(1) The provision in the policy for reinstatement contemplated a contract to that effect between the insured and the defendant;

(2) If the certificate of insurability was not signed by authority of the insured, there was no contract to reinstate the policy;

(3) If it was signed by her authority, she was bound by its terms, the truth of the facts therein certified was a condition precedent to reinstatement of the policy, and the burden of proving that such facts were true was on the plaintiff;

(4) The plaintiff had not sustained that burden;

(5) Knowledge by the defendant of the insured's illness and of the falsity of the statements in the certificate of insurability did not establish a waiver by the defendant of the express condition upon which the policy was reinstated nor estop the defendant to rely upon a breach thereof;

(6) The acceptance of premiums by the defendant, in accordance with the contract of reinstatement, with such knowledge did not amount to a waiver or estoppel;

(7) The plaintiff could not recover on the basis that the policy had been reinstated.

The mere acceptance by the insurance company, after default in the payment of a premium under the policy and in the circumstances of the certificate of insurability above described, of payment of that premium and also of the next as it became due, did not warrant a finding that, before the earlier of such premiums was paid, the condition of the policy as to the payment of premiums was waived by the company by any course of dealing between the insured and the company previous to that time; nor was a finding warranted that the acceptance of the two premiums continued the policy in force after the default when it appeared that the certificate of insurability under its terms had been given thereafter and it did not appear that the premiums were not accepted by the defendant in accordance with the terms of such certificate and subject to its conditions, nor that the acceptance was unconditional.

CONTRACT.   Writ dated July 27, 1927.

The action was tried in the Superior Court before *Keating*, J.   The plaintiff's wife died on June 2, 1927.   Other material evidence is stated in the opinion.   The judge ordered a verdict for the defendant and reported the action for determination by this court.

*W. J. Barry*, for the plaintiff.

*W. P. Kelley*, for the defendant.

FIELD, J.   This is an action of contract to recover $5,000 on an insurance policy issued by the defendant on the life of Awdokia Kukuruza, the wife of the plaintiff, and payable to the plaintiff as beneficiary upon her death.   On motion of the defendant a verdict for it was directed, and the plaintiff excepted.   The case is reported on the agreement that "if the trial judge was right in allowing the defendant's

motion and directing a verdict for the defendant, judgment is to be entered for the defendant, otherwise judgment is to be entered for the plaintiff in the sum of $5,000 and interest from June 6, 1927."

The verdict was directed rightly.

According to the terms of the policy the defendant insured the life of the insured in consideration of the payment of premiums. The policy provided for the payment of premiums in quarterly instalments and provided further that except as therein "expressly provided, the payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the succeeding premium or instalment becomes payable." It was provided also that a "grace of thirty-one days . . . during which the policy shall remain in force, will be granted for the payment of premiums or regular instalments thereof," and, with limitations not now material, that the policy might be reinstated "after default in payment of premium" "upon production of evidence of insurability satisfactory to the Company and approved at its Home Office . . . and payment of arrears of premiums." No modification of the policy was to be valid "unless made by the President, a Vice President, the Secretary or an Assistant Secretary, and no other person . . . [was] authorized to modify or waive any of the terms and conditions of this policy, nor to extend the time for payment of premiums or other moneys due to the Company, or to bind the Company by making any promise or by accepting any representation or information not contained in the application for this policy." Premiums were payable "at the Home Office of the Company, or to a duly authorized agent presenting the official receipt signed by the President or Secretary, and countersigned by the agent designated on such receipt."

It is not disputed that the quarterly instalment due January 19, 1927, which could have been paid without lapse of the policy on or before February 20, 1927, was not paid until February 28. The plaintiff's testimony, binding upon him, was that a "bill" for this instalment of premium was received "seven or ten" days before January 19, 1927,

that he paid this instalment to one Morris on February 28, on his personal receipt, that Morris called at the plaintiff's house on January 17, 1927, and again on February 28, when this payment was made, that later the receipt of the defendant for this instalment was received, that previous instalments were paid to Morris on his personal receipt, and subsequently receipts therefor came from the defendant's main office, and that the plaintiff "knew no mail came to the house that the policy had lapsed" and "didn't know anything about the policy lapsing in ninety or thirty days." There was evidence also that within the grace period the plaintiff paid and the defendant accepted the instalment due April 19, 1927. The defendant's receipts for the premiums were in evidence. There was evidence that Morris was an agent of the defendant, but there was nothing in the policy requiring the defendant to send an agent to call for the premiums thereon.

The continuance of the defendant's obligation under the policy, except as to paid-up insurance and other so called nonforfeiture options, according to its terms, was conditional upon the payment of premiums as provided therein (see *Jackson* v. *Mutual Life Ins. Co. of New York*, 186 Fed. Rep. 447), and no affirmative action by the defendant was necessary to terminate the corresponding rights of the insured under the policy upon default in the payment of an instalment of premium. *Burke* v. *Prudential Ins. Co. of America*, 221 Mass. 253, 255. *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, 342. *Iowa Life Ins. Co.* v. *Lewis*, 187 U. S. 335. Williston on Contracts, §§ 746, 758. No duty to inform the insured of the lapse of the policy can be inferred from the provision therein for extended term insurance upon application by the insured within ninety days from the due date of the instalment in default, as contended by the plaintiff. Nor was a notice of lapse required because of illness of the insured even if known to the defendant. See *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336.

The evidence did not warrant a finding that before the payment of the January instalment the condition as to payment of premiums was waived by the defendant. No course

of dealing between the defendant and the insured prior to the payment of this instalment was shown which would give to the insured the right to believe that late payment of instalments would be excused apart from a reinstatement of the policy as provided therein.  There was evidence of default in two previous quarterly instalments — out of six due after the policy was issued — and evidence, binding upon the plaintiff, that in each instance he, purporting to act for the insured, applied for reinstatement of the policy.  Evidence that an agent of the defendant collected premiums at the plaintiff's house did not warrant an inference that the defendant was required to send an agent to make such collections.  *Baraca* v. *Metropolitan Life Ins. Co.* 257 Mass. 538, 540.  It follows that, on the undisputed facts and the evidence binding upon the plaintiff, the policy was not in force at the death of the insured unless it was reinstated in accordance with its terms or unless, apart from such a reinstatement, the breach of the condition as to payment of premiums, in the case of the January instalment, was waived by the defendant or the defendant was estopped to insist upon it.

The plaintiff cannot recover on the basis of a reinstatement of the policy.  The provision for reinstatement contemplated a contract to that effect between the insured and the defendant.  There was testimony that the policy was reinstated on a certificate of insurability, purporting to be signed by the insured — by her mark — wherein it was stated that she requested the defendant "to reinstate said policy . . . upon condition of the truth of the following statements and agreements," and certified that she was "in good health" and "during the time . . . since the premium . . . in default became due" she had "had no injury, ailment, illness or disease, nor symptoms of such" nor had she "consulted a physician."  According to the plaintiff's testimony, when Morris received the payment of the instalment of premium on February 28 he signed the insured's name and made a mark purporting to be hers on this certificate, and the plaintiff signed his name as a witness to the signature.  If this certificate of insurability was not signed by authority of the

insured there was no contract to reinstate the policy. On the other hand, if it was signed by her authority she was bound by its terms, the truth of the facts therein certified was a condition precedent to reinstatement of the policy and the burden of proving it was on the plaintiff. *Reidy* v. *John Hancock Mutual Life Ins. Co.* 245 Mass. 373, 375. *Clark* v. *Mutual Life Ins. Co. of New York*, 251 Mass. 1, 4. *Umans* v. *New York Life Ins. Co.* 259 Mass. 573, 575–576. The evidence did not warrant a finding that the facts certified were true. The plaintiff admitted that on February 22, 1927, he took the insured to a hospital, "because she had mental trouble," where she remained until her death. Even apart from her mental condition there was no affirmative evidence of the truth of the statements in the certificate and there was some evidence that these statements were false. There was evidence that, on February 28, the plaintiff told Morris that his wife was then in a hospital, and evidence, also, that the manager of the defendant's office, with which Morris was connected, had some knowledge of the illness of the insured. However, it is not necessary to consider whether the defendant was bound by this knowledge, for, under our decisions, its knowledge of the falsity of the statements in the application for reinstatement would not establish a waiver of the express condition upon which the policy was reinstated or estop the defendant to insist upon a breach thereof. *McCoy* v. *Metropolitan Life Ins. Co.* 133 Mass. 82, 85. *Batchelder* v. *Queen Ins. Co.* 135 Mass. 449. *Thomas* v. *Commercial Union Assurance Co. Ltd.* 162 Mass. 29, 34. See also *Lumber Underwriters of New York* v. *Rife*, 237 U. S. 605, 609; *Kwiatkowski* v. *Brotherhood of American Yeomen*, 243 N. Y. 394. Compare, however, Vance on Insurance, (2d ed.) pages 497–514. Nor would acceptance of premiums by the defendant, in accordance with the contract of reinstatement, with such knowledge, amount to a waiver or estoppel. For the purposes of this proceeding, so far as it is based upon a contract of reinstatement, the plaintiff must be taken to have known the terms thereof and to have made payments in accordance therewith. See *Urbaniak* v. *Firemen's Ins. Co.* 227 Mass. 132, 134. No breach of condition happen-

ing after the reinstatement of the policy is shown.    See *Batchelder* v. *Queen Ins. Co.* 135 Mass. 449, 450.

The plaintiff contends, however, that, apart from any contract of reinstatement, the policy was continued in force by the acceptance by the defendant of the January and April instalments of premium.    Irrespective of the scope of Morris's agency for the defendant, it could have been found that the defendant accepted the payments with knowledge of the default in the January instalment.    Undoubtedly the policy could have been continued in force without reinstatement according to its terms (see *Shapiro* v. *Security Ins. Co.* 256 Mass. 358), and the unconditional acceptance of premiums by the defendant after default in payment known to the defendant would have that effect. *Rice* v. *New England Mutual Aid Society,* 146 Mass. 248, 252.    *Shea* v. *Massachusetts Benefit Association,* 160 Mass. 289, 294.    *White* v. *McPeck,* 185 Mass. 451, 454.    *McNicholas* v. *Prudential Ins. Co. of America,* 191 Mass. 304, 308.    The plaintiff's proof, however, does not bring the case within this rule.    He has not shown that the premiums were accepted unconditionally.    There was no evidence that the January or the April instalment was not paid by the plaintiff or accepted by the defendant in accordance with the terms of the application for reinstatement and subject to its conditions.    Whether the application was made by Morris by authority of the plaintiff or merely with his knowledge, the plaintiff must be taken to have known its terms and to have paid these instalments in accordance therewith, in the absence of any evidence that the payments were tendered upon other terms.

It follows that, in accordance with the terms of the report, judgment is to be entered for the defendant.

*So ordered.*