CURTIS W. PIERCE *vs.* MASSACHUSETTS ACCIDENT COMPANY.

Suffolk.     November 14, 1938. — July 7, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Insurance*, Renewal of policy, Reinstatement of policy. *Equity Jurisdiction*, To relieve against forfeiture.

An insurance company which in practice, although not required to do so by the provisions of a disability policy, had sent to the insured each year for ten years a seasonable notice of the approach of the day

when an annual premium must be paid in order to renew his policy as he had the right to do from year to year under its provisions, was required in a suit in equity to reinstate the policy, which had lapsed because of nonpayment of the premium for the eleventh year, where it appeared that the policy was especially favorable to the insured and he could not obtain another like it, that there was no provision in it reserving to the company a right to terminate it, that the company desired the lapse and had sought to bring it about by not sending the customary notice, believing that the insured had come to rely on it, and that the insured's failure to pay the premium was due to the fact that he had so relied.

BILL IN EQUITY, filed in the Superior Court on October 11, 1937.

The first prayer of the bill was that the defendant be ordered to reinstate the plaintiff's policy upon payment by him of the required premium as of August 7, 1937.

After a hearing by *Kirk*, J., a final decree was entered dismissing the bill.

*J. B. Sly*, for the plaintiff.

*F. X. Hurley*, for the defendant.

LUMMUS, J.   The plaintiff, a resident of New Jersey, on August 7, 1925, at the age of forty-five years, took out a policy of disability insurance in the defendant company, under which he became entitled to $100 a week during any period of "disability from accidental injury or disease which necessarily, wholly and continuously disables him from the performance of any and every kind of duty pertaining to his occupation or business," and to further but smaller payments for any succeeding partial disability.   The policy was written for one year beginning on August 7, 1925, for a premium of $289.20 payable and paid in advance.   But it was provided that "the insured shall have the right to renew this policy from year to year upon the payment of the premium on or before the anniversary date."   No right in the defendant to terminate the insurance was reserved. There was no provision for notice by the defendant to the plaintiff of the day upon which the premium must be paid for the annual renewal of the policy.   But in practice the defendant did give the plaintiff seasonable notice of the approach of that day, in every year beginning with 1926 and ending with 1936, and the plaintiff paid the premium

in each of those years on or before the appointed day, thus keeping his policy renewed and alive.

The plaintiff had become accustomed to pay on receipt of the notices, and did not charge his mind with the day. He received no such notice in 1937, and therefore failed to pay the premium on or before August 7, 1937. On August 21, 1937, as soon as he discovered his error, he wrote the defendant, asking for a notice in order that he might pay. The defendant replied that the policy had terminated and would not be reinstated. Later a tender of payment was refused. If material, the plaintiff has remained in good health.

The reason why no notice was sent the plaintiff was that the defendant wished to procure lapses or failures to renew on the part of New Jersey policy holders in cases of policies like the one the plaintiff had. That was a form of policy especially favorable to the insured. The plaintiff cannot obtain another policy like it. The president of the defendant testified that he told the plaintiff that "the salvation of our company, which is fifty-four years of age, was that these policies should not be renewed if they lapsed and that we were making no exceptions;" that that form of policy was unprofitable to the defendant; that "to continue with the amount of noncancellable business would prove disastrous to the company and to its numerous policy holders; that the existence of the company depended upon obtaining as many lapses as possible."

Upon the bill, filed October 11, 1937, to reinstate the policy, a decree was entered dismissing the bill without costs. The plaintiff appealed.

It is true that ordinarily prompt payment of the premium is necessary in order to keep alive an insurance policy like this one. "Prompt payment and regular interest constitute the life and soul of the life insurance business," and the same is true of disability insurance. *Thompson* v. *Insurance Co.* 104 U. S. 252, 258. *Kukuruza* v. *John Hancock Mutual Life Ins. Co.* 276 Mass. 146. *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330, 334. The custom of insurance companies to give notice of approaching days

for the payment of premiums does not bind them contractually to continue to do so, and does not alter the duty of the insured to pay, whether he gets notice or not. *Thompson* v. *Insurance Co.* 104 U. S. 252, 258, 259. *Kukuruza* v. *John Hancock Mutual Life Ins. Co.* 276 Mass. 146, 150.

Ordinarily a court of equity will not relieve against the forfeiture of a policy for nonpayment of premium. "The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture they are deprived of the means which they have reserved by their contract of compelling the parties insured to meet their engagements. . . . To hold the company to its promise to pay the insurance, notwithstanding the default of the assured in making punctual payment of the premiums, is to destroy the very substance of the contract." *Klein* v. *Insurance Co.* 104 U. S. 88, 91. If in insurance cases the equitable jurisdiction to relieve against forfeitures were commonly exercised, policy holders would be encouraged to take the chance of not paying the premium promptly, with the intention of never paying unless a loss should occur, and of relying upon that jurisdiction to help them if a loss should occur. It would involve insurance companies in much costly litigation, and in great uncertainty as to their obligations.

The present case is quite different from the ordinary case. It is not a case where an insurer is disappointed by not receiving promptly a premium that is part of its life blood, and rightly insists upon the natural consequence of the default. Instead, the insurer would have been disappointed had the default not occurred, for it had plotted to obtain the default by omitting the customary notice upon which, as it correctly judged, the plaintiff had come to rely. Its motive was the desire to escape from its valid contract to insure the plaintiff by successive renewals against disability during his life, and its excuse was that as he got older disability would become more likely. Its fixed pre-

mium had taken into account that likelihood, or should have done so.   The defendant was willing to receive that premium and to assume the risk while the risk was small. When the risk became greater because of advancing age the defendant sought escape from the obligation of its contract.

To the eye of a court of equity, asked to relieve against a forfeiture of, or to reinstate, an insurance policy that cannot be replaced, there is no substantial difference between a policy for a life term terminable for nonpayment of a periodical premium, and a policy for a year with a right to renew it year by year during life upon payment of a periodical premium.   Compare *New York Life Ins. Co.* v. *Statham*, 93 U. S. 24;  *Burnet* v. *Wells*, 289 U. S. 670, 679.   Equity will not allow a party to benefit by a default that he has deliberately procured by stratagem.   It would be a reproach to our jurisprudence if the plaintiff could not have relief in accordance with his first prayer.*

*Decree reversed.*

*Decree for plaintiff with costs.*

---

* Tending to support the conclusion that he can have such relief are the following authorities.   *Leslie* v. *Knickerbocker Life Ins. Co.* 63 N. Y. 27. *Carey* v. *John Hancock Mutual Life Ins. Co.* 114 App. Div. (N. Y.) 769. *Home Protection of North Alabama* v. *Avery*, 85 Ala. 348.   *Grant* v. *Alabama Gold Life Ins. Co.* 76 Ga. 575, 583, 584.   *Supreme Council Catholic Benevolent Legion* v. *Grove*, 176 Ind. 356, 375 (compare *Western Life Indemnity Co.* v. *Bartlett*, 84 Ind. App. 589).   *Mayer* v. *Mutual Life Ins. Co.* 38 Iowa, 304, 309, 310 (compare *Mandego* v. *Centennial Mutual Life Association*, 64 Iowa, 134). *Elgutter* v. *Mutual Reserve Fund Life Association*, 52 La. Ann. 1733.   *Missouri Cattle Loan Co.* v. *Great Southern Life Ins. Co.* 330 Mo. 988.   *Goedecke* v. *Metropolitan Life Ins. Co.* 30 Mo. App. 601.   *Union Central Life Ins. Co.* v. *Pottker*, 33 Ohio St. 459.   *Helme* v. *Philadelphia Life Ins. Co.* 61 Penn. St. 107, 110, 111 (compare *Smith* v. *National Life Ins. Co.* 103 Penn. St. 177). *Lane* v. *New York Life Ins. Co.* 147 S. C. 333.   *Insurance Co.* v. *Hyde*, 101 Tenn. 396, 404, 405.   *Kavanaugh* v. *Security Trust & Life Ins. Co.* 117 Tenn. 33.   *Mutual Life Ins. Co.* v. *Davis*, 154 S. W. 1184 (Tex. Civ. App.).   *Knoebel* v. *North American Accident Ins. Co.* 135 Wis. 424, 20 L. R. A. (N. S.) 1037. Am. Law Inst. Restatement: Contracts, §§ 295, 374 (2).   Joyce, Insurance (2d ed.) §§ 1332–1334.   Williston, Contracts (Rev. ed.) §§ 677, 1425A.   See also *Insurance Co.* v. *Eggleston*, 96 U. S. 572; *Phoenix Ins. Co.* v. *Doster*, 106 U. S. 30; *Kaeppel* v. *Mutual Life Ins. Co.* 78 Fed. (2d) 899; *Thomas* v. *New York Life Ins. Co.* 81 Fed. (2d) 614.