**Jeannette D. MILLARD, Plaintiff,**

v.

**NEW JERSEY LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 87–0106–WD–A.**

United States District Court,
D. Massachusetts.

April 4, 1989.

Jeffrey A. Newman, Charles R. Capace, Boston, Mass., for plaintiff.

Jeff Armstrong, George A. Berman, Miles E. Hoisington, Posternak, Blankstein & Lund, Boston, Mass., for defendant.

## OPINION

BAILEY ALDRICH, Senior Circuit Judge.[*]

This is an action on a policy of insurance (No. 139,911) issued on the life of Donald A. Millard, Sr., by defendant New Jersey Life Insurance Company, payable to plaintiff. The insured died on May 30, 1986.

The annual premium due April 2, 1986 admittedly was not paid within the 31 day grace period. It is a term policy, with no reserve value to maintain it, and defendant moves for summary judgment. The following facts it concedes for this limited purpose.

On May 28, 1986 the insured received from defendant a document entitled Late Payment Offer. On the face this showed the due date of the premium, and its amount, and a typed statement, "Payment of this premium automatically renews your policy for a 1 year period." On the back, however, was considerable, plainly readable, printing, including a statement that the policy had lapsed, (unless otherwise provided by the terms of the policy, which it was not), and that the offer was conditioned on payment of the premium "no later than 45 days from date due." It also stated, "This offer ... shall not create a precedent for waiving of the conditions of the policy in regard to reinstatement or payment of any subsequent premium."

■ The late payment offer, presumably mailed about May 1, was improperly addressed, owing to defendant's fault, it having been notified by the insured of an error in its records a number of times.[1] However, except for the question of estoppel, post, defendant was not obliged to make the offer at all, and plaintiff acquired no rights from the fact that the insured received it too late to meet its terms because of careless record-keeping on defendant's part. The policy did not require such an offer and, again apart from estoppel, since defendant had no duty to make it, it could be as careless as it pleased as to delivery without incurring liability in tort or contract. Plaintiff's contention that the insured could, and did, accept the offer made on the front side of the paper, and disregarded the rest, should qualify for Mr. Guinness's well-known book.

Plaintiff's only possible claim is equitable estoppel, based on the contention that de-

---

[*] Sitting by designation.

1. There was an error from the beginning, due to the soliciting agent's poor handwriting. Defendant sometimes had it right, and sometimes, in spite of the insured's complaints, it did not.

fendant had led the insured to believe, as allegedly he did believe, that if he forgot to pay the premium—of which, admittedly, he had received due notice—within the grace period, he would receive an offer of late payment, and would have 14 days to accept by paying. The asserted basis for this claim is that the insured had received such offers before, and counted on their repetition. Defendant says there was insufficient reason to warrant that expectation.

Plaintiff originally had two insurance policies; this one, and No. 142,108. In the spring of 1983 no notice was received of the annual April 2 premium due on the 139,911 policy, but on May 13 a late payment offer was received. The insured promptly tendered the premium within the 14 days after the policy's 31 day grace period had expired, and it was accepted.

The 142,108 policy's annual premium was due on October 8. No premium notice was received in 1983, but a late payment offer was received on November 16. The insured tendered the premium within the requisite 14 days after the expiration of grace, and it was accepted.

No problem arose in the spring of 1984, but that fall no notices of any kind were received on the 142,108 policy, and the insured tendered no premium. After the 45 days a formal lapse notice was received, galvanizing him to try to pay. Defendant, however, refused to accept late payment and to reinstate the policy unless he could pass a new medical. He tried, and failed, and the policy remained lapsed.

The next problem was the present one. Itemizing the facts asserted as justifying estoppel, and thus permitting the insured to pay after the 45 days because of the late offer, they are these.

(1) An internal company practice, in existence ever since the policies were issued, to send late payment offers and to accept late payment within the 45 days.

(2) The furnishing the insured a late payment offer on Policy 139,911 in May, 1983, and accepting the premium within the 45 days.

(3) Furnishing the insured a late payment offer on Policy 142,108 in November, 1983, and accepting the premium within the 45 days.

(4) The offers were on a printed form, evidently standard.

The facts asserted as defeating estoppel are,

(1) There was nothing in the policy, and the insured had no knowledge of any company practice other than what he could reasonably infer from the above occurrences.

(2) The previous offers stated that making them was to create no precedent.

(3) After the two 1983 instances, when, in the fall of 1984, the insured did not pay on Policy 142,108 within the grace period, and no late payment offer was received, the defendant refused to accept a late payment.

■ There are two particularly pertinent Massachusetts cases. In *Pierce v. Massachusetts Accident Co.*, 303 Mass. 506, 22 N.E.2d 78 (1939), the company had sent advance notice of premium due dates for ten years, but then stopped without have advised the insured of a change in practice, and plaintiff failed to pay. The court required the company to accept the premium late and reinstate the policy. It is true that the court emphasized the "inequity" because the company's failure had been deliberate in order to get off the risk, and did not speak of reliance, but inequity cannot create rights out of whole cloth. Estoppel requires reasonable reliance. *Noble v. John Hancock Mutual Life Ins. Co.*, 7 Mass.App.Ct. 97, 386 N.E.2d 735 (1979). Obviously, however, reliance there existed. After ten continuous years the court's decision could well have been the same if the company had failed to send the customary notice simply by oversight. *See Kukuruza v. John Hancock Mut. Life Ins. Co.*, 276 Mass. 146, 149–50, 176 N.E. 788, 790 (1931).

With *Pierce* compare *Rozen v. Cohen*, 350 Mass. 231, 214 N.E.2d 451 (1966). There defendant broker had, without complaint, accepted plaintiff's "habitual delay" beyond the due date in the payment of

premiums—for five years, involving some eighteen policies. A personal falling out thereafter took place between the two. Defendant rejected the next payment as too late. In ordering a verdict for defendant the court said,

> We recognize that Cohen's past forbearance in respect of overdue premiums might have estopped him to cause cancellation of the policies without reasonable notice that there would be no further forbearance. [But, after the disagreement, Rozen] should have known that failure to pay at once the remaining premium balances then due involved serious risk.

350 Mass. at 236, 214 N.E.2d 451. This plainly confirms that there must be currently reasonable reliance.

■ An insured with even minimum intelligence knows that extending the agreed time for payment of premium is a unilateral opportunity for him to view any changes in his health before deciding whether to renew. An insurer must be able to specify the terms of such an offer. Here defendant had offered the opportunity once for each policy, stating, when it did so, that it should not be taken as a precedent for the future. There might come a time when a provision specifying that an act was not to be construed as a precedent or waiver, might itself be thought waived, but not after only once on each policy. This was peculiarly so here in light of defendant's making no offer the following year, and standing on its refusal. As matter of law there was no basis for an expectancy in 1986.

■ Finally, plaintiff says that on May 28 he called defendant's New Jersey office and spoke with the person with whom the insured normally did business, and she told him that he could pay late. There is no showing that she had authority to waive defendant's customary reinstatement requirements. There would be a heavy burden on plaintiff for this.

Plaintiff filed a motion for summary judgment. It is denied.

Defendant's motion for summary judgment is granted. The complaint is dismissed.