**Sandra GAFFNEY, Plaintiff,**

v.

**AAA LIFE INSURANCE COMPANY, Defendant.**

**No. 97–11863–JLT.**

United States District Court,
D. Massachusetts.

April 30, 1998.

James A. Brett, Reed, O'Reilly & Brett, Boston, MA, for Plaintiff.

Katherine A. Hesse, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Defendant.

## MEMORANDUM

TAURO, Chief Judge.

This action arises out of Defendant AAA Life Insurance Company's refusal to pay Plaintiff Sandra Gaffney proceeds under a life insurance policy. Mrs. Gaffney asserts state-law claims for breach of contract (Counts I and II), failure to give notice of potential cancellation of the policy as required by Massachusetts General Law c. 175, §§ 187C and 187D (Count I), and violations of M.G.L. c. 93A and 176D for unfair and deceptive trade practices (Count II). Presently before the court are the parties' cross-motions for summary judgment.[1]

## I.

## BACKGROUND

Defendant AAA Life Insurance, a Washington D.C. corporation with its principal place of business in Florida, sells life insurance to auto club members. On March 15,

---

**1.** Due to confusion regarding which counts to brief, Plaintiff has asked for summary judgment on Counts I and II, whereas Defendant has limited its motion to Count I. This confusion does not alter the court's analysis, however, as it will focus on the issue of notice as it affects both counts—an issue that both parties have addressed squarely in their papers.

1996, Plaintiff Gaffney's husband purchased an accidental life insurance policy (the "Policy") from Defendant, naming Plaintiff as the beneficiary.

Coverage under the Policy was provided in exchange for Mr. Gaffney's payment of premiums in accordance with its terms. Mr. Gaffney owed a quarterly premium on the Policy on June 15, 1996. Thereafter, Defendant sent Mr. Gaffney four notices by regular mail, each indicating that, if payment was not received, the Policy would be terminated. He never submitted such payment. Accordingly, his Policy lapsed for non-payment of premiums at the expiration of the 31 day grace period provided for therein.

On October 20, 1996, Mr. Gaffney died when a chartered commercial aircraft, which he had hired to take him hunting in Canada, crashed in Eel River Crossing, New Brunswick, Canada. On November 19, 1996, Plaintiff submitted her claim for accidental death benefits under the Policy. On December 16, 1996, Defendant notified Plaintiff that the Policy had lapsed for non-payment of premiums and that her claim would, therefore, not be satisfied.

## II.

### ANALYSIS

#### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 201 (1st Cir.1995). In assessing the record under these strictures, the court must view it "in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Trans. Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

#### B. Notice Requirement of M.G.L. c. 175

■ Plaintiff does not contest the fact that her husband purchased the life insurance policy and then failed to pay not only the first, but all, of the required premiums. Plaintiff, nonetheless, now attempts to recover life insurance benefits under this plan by claiming deficiency of termination notice on the part of Defendant.

Massachusetts General Law Chapter 175 establishes proper notice requirements for termination of a policy by the insurer.[2] Section 110B of that Chapter applies to a policy that *is not*, "by its terms," cancelable by the insurance company. Under this provision, the insurer may not terminate such a policy for non-payment of premiums within three months of the due date of the premium unless notice of the termination is sent via regular mail. If, however, the outstanding payment is still unpaid three months from the due date of the premium, the policy automatically terminates without notice.[3] M.G.L. 175 § 110B. If, on the other hand, an insurance policy *is* cancelable by the insurer, under Section 187C, the insurer must send notice of the termination and obtain a certificate of mailing receipt from the United States Postal Service.[4]

Plaintiff argues that the "Right to Terminate" section of the Policy clearly states that the insurer may cancel the Policy at any time, and Section 187C, therefore, applies. Defendant acknowledges the "Right to Terminate" provision, but points out that, under Massachusetts insurance regulation 211 C.M.R. 42.05(17), , no individual accident insurance policy may be cancelable by the insurer, and, therefore, the "Right to Terminate" provision is void. Accordingly, Defen-

---

**2.** Because both parties apply Massachusetts law in their papers, the court will do the same in its analysis, even though the contract at issue specifies that the law of the District of Columbia applies.

**3.** Given that this provision applies, the Policy would have terminated on September 15, 1996, more than one month before the accident, even absent any notice.

**4.** It is uncontested that Defendant did not send its notices return receipt requested.

dant asserts, only Sections 110B is relevant to this case, given that Chapter 175 applies at all.

The court need not, however, reach the question of whether the cited regulation voids the contract's cancellation provision, because it can dispose of the motion by simply determining whether the notice provisions of Chapter 175 apply at all. More specifically, in *Constantine v. Union Bankers Insurance Company*, CA No. 85–3727–S, slip op. (D.Mass. Jan. 22, 1987), Judge Skinner found that Chapter 175's notice provisions do not apply to "situations in which a policy simply lapses for failure to pay a premium. The purpose of [these provisions] is to provide a mechanism for insurance companies to follow if they wish to terminate policies not in default." *Constantine*, CA No. 85–3727–S, slip op. at 6. In so holding, Judge Skinner relied on *Kukuruza v. John Hancock Mutual Life Insurance Company*, 276 Mass. 146, 176 N.E. 788 (1931).

Plaintiff argues that the court should not rely on *Kukuruza* for the proposition that Chapter 175's notice provisions do not apply to situations where a policy lapses for nonpayment of a premium. Plaintiff maintains that, because the language of the Policy indicates that it is cancelable by the insurance company, it differs significantly from the policies at issue in *Constantine* and *Kukuruza.* Plaintiff's argument, however, is flawed. First, the policies in the cited cases were also cancelable by the insurer. Furthermore, it is clear that Chapter 175's notice provisions only apply in the case of cancellation of a policy and not in the case of lapse for nonpayment. It is this key distinction that Judge Skinner's opinion emphasizes and clarifies.

In this case, Defendant did not cancel the Policy within the meaning of Chapter 175. Instead, the Policy terminated on September 15, 1996 due to Plaintiff's nonpayment of premiums that had been outstanding for longer than three months.[5] Accordingly,

Plaintiff's notice was not only sufficient, but superfluous.

### C. *Remaining Claims*

Because the court finds that the Policy had lapsed at the time Plaintiff filed her life insurance claim, Plaintiff's Count II claims premised on failure to research must also be disposed of. Under M.G.L. c. 176D, a failure to research claim will only survive if proper investigation would have made liability on the underlying claim reasonably clear and would, therefore, have foreclosed rejection of that claim. *Van Dyke v. St. Paul Fire and Marine Insurance Company*, 388 Mass. 671, 678, 448 N.E.2d 357, 362 (1983). In this case, the Policy lapsed on September 15, 1996, and Plaintiff filed her claim on November 19, 1996. Assuming, *arguendo*, that Defendant failed to properly research plaintiff's claim at the time of filing, it remains evident that, had Defendant done so, it would have rejected the claim due to its lapsed status. Any failure by Defendant to research the claim did not, therefore, cause any injury to or adversely affect Plaintiff.

In light of this fact, the court finds that all of Plaintiff's claims must fail.

### III.

### *CONCLUSION*

For the foregoing reasons, Defendant AAA Life Insurance's Motion for Summary Judgment is ALLOWED and accordingly, Plaintiff's complaint is dismissed in its entirety, and Plaintiff Gaffney's Motion for Summary Judgment is DENIED.

An order will issue.

---

**5.** Similar case law, stating that an insurer's obligation to provide benefits under an insurance contract exists only for as long as the insured meets its contractual obligation to pay premiums, further supports Defendant's position. *Rocci v. Massachusetts Accident Co.*, 222 Mass. 336, 342, 110 N.E. 972 (1916), *Kukuruza v. John Hancock Mutual Life Ins. Co.*, 276 Mass. 146, 149, 176 N.E. 788 (1931), *R & F Micro Tool Co., Inc. v. General American Life Ins. Co.*, 23 Mass. App.Ct. 694, 696, 505 N.E.2d 539 (1987).