James F. KAVANAGH, Jr.,
Plaintiff, Appellant,

v.

NEW YORK LIFE INSURANCE
COMPANY, Defendant,
Appellee.

No. 98-1407.

United States Court of Appeals,
First Circuit.

Heard Feb. 1, 1999.

Decided March 24, 1999.

Robert P. Joyce, Jr., with whom Gabriel O. Dumont, Jr., was on brief, for appellant.

A. Hugh Scott, with whom William S. Hewitt, Jr., was on brief, for appellee.

Before BOUDIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

This insurance case concerns the effect of Mass. Gen. Laws ch. 175, § 187C on defendant-appellee New York Life Insurance Company's ("New York Life") refusal to pay disability insurance benefits to James Kavanagh, Jr. The district court ruled that New York Life did not have to comply with the provisions of section 187C, which sets forth notification procedures an insurer must follow to effect a "cancellation" of an insurance policy, following Kavanagh's failure to pay the premiums due on a policy issued to him by New York Life. Accordingly, the court concluded that the policy was not in force at the time of Kavanagh's disability and that he was not entitled to receive disability benefits. We affirm.

I.

The following facts are not disputed. In November 1992 New York Life issued to James Kavanagh, Jr. a Premier Disability Income Policy ("the policy") which provided for the payment of a monthly disability income benefit if he became totally disabled. Coverage under the policy was expressly conditioned upon the timely payment of premiums, which were due quarterly.[1] Page eleven of the policy, entitled "Right to Renew Policy," provided in pertinent part:

---

* Of the Eighth Circuit, sitting by designation.

1. As originally issued in November 1992, the policy provided for quarterly payments. In December 1992, about one month after the policy was issued, the policy was changed at Kavanagh's request to provide for annual payments. In December 1993, again at Kavanagh's request, the premium payment schedule was changed back to quarterly.

**Non–Cancellable and Guaranteed Renewable to Age 65** While this policy is in force and if the Insured has not reached age 65, we cannot take any of the actions listed below, without your consent.

(a) Refuse to let you renew the policy.

Kavanagh made timely premiums payments as required by the policy from the time it was issued through December 1995.

On February 14, 1996, New York Life sent Kavanagh a premium notice for the quarterly payment due on March 6, 1996, by first class mail to Kavanagh's address shown in New York Life's records. Kavanagh alleges that he never received the notice. After he failed to pay the premium due March 6, New York Life sent Kavanagh a lapse notice dated April 4, 1996, by first class mail to the same record address. The notice stated that as of April 4 Kavanagh's policy had lapsed, and that the policy would be reinstated if payment was received by May 4. Kavanagh alleges that he did not receive the lapse notice. New York Life did not receive the premium payment by May 4.

In August 1996 Kavanagh's physician determined that Kavanagh was totally disabled due to a Grade III astocytoma of the left frontal brain. In September 1996 Kavanagh filed with New York Life an application for disability benefits, which was denied on the basis that the policy had lapsed on April 4, 1996, for nonpayment of the premiums due from March 6, 1996, and was not in force when his total disability began. Kavanagh thereafter filed an action seeking declaratory and monetary relief,[2] alleging *inter alia* that he was entitled to disability benefits under the policy because New York Life failed to properly effect its cancellation pursuant to Mass. Gen. Laws ch. 175, § 187C. After the parties filed cross-motions for summary judgment, the district court determined that section 187C was inapplicable and granted summary judgment in favor of New York Life. This appeal followed.

## II.

The question presented is narrow—namely, whether Mass. Gen. Laws ch. 175, § 187C, which sets forth notification requirements that an insurer must follow to effect a cancellation of any insurance policy "which is subject to cancellation" by the insurer, is applicable to the lapse of a guaranteed-renewable policy for nonpayment of premiums. Section 187C provides in pertinent part:

A company issuing any policy of insurance *which is subject to cancellation* by the company shall effect cancellation by serving the notice thereof provided by the policy and by paying or tendering, [subject to certain exceptions not relevant here], the full return premium due thereunder in accordance with its terms.... Such notice and return premium, if any, shall be delivered in hand to the named insured, or be left at his last address as shown by the company's records or, if its records contain no such address, at his last business, residence or other address known to the company, or be forwarded to said address by first class mail, postage prepaid, and a notice left or forwarded, as aforesaid, shall be deemed a sufficient notice. No written notice of cancellation shall be deemed effective when mailed by the company unless the company obtains a certificate of mailing receipt from the United States Postal Service....

Mass. Gen. Laws ch. 175, § 187C (emphasis added). Kavanagh urges an expansive reading of section 187C's reference to policies which are "subject to cancellation," arguing that this phrase contemplates any policy which can be discontinued, including policies which can be discontinued because of nonpayment of premiums. Based on his premise that section 187C is applicable in such circumstances, Kavanagh argues the policy was still in effect at the time he became totally disabled because New York Life did not notify him by certified mail of its intention to "cancel" the policy due to nonpayment of premiums.

2. The action was originally filed in state court, but was removed by New York Life to the United States District Court for the District of Massachusetts on the basis of diversity. *See* 28 U.S.C. §§ 1332, 1441.

New York Life argues, however, that section 187C's reference to policies which are "subject to cancellation" contemplates policies that are subject to unilateral termination by insurers pursuant to a provision in the policies granting them that right, which was not the case with Kavanagh's policy. Rather, Kavanagh's policy expressly stated that it was "guaranteed renewable" provided he paid the required premiums. According to New York Life, section 187C's reference to policies which are "subject to cancellation" was not intended to encompass policies which simply lapse on their own accord due to nonpayment of premiums, as here.[3] Reviewing the court's interpretation of Massachusetts law de novo, see *Medical Prof'l Mut. Ins. Co. v. Breon Laboratories Inc.*, 141 F.3d 372, 374 (1st Cir.1998)(citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)), we conclude that the court properly ruled that section 187C does not apply in these circumstances.

■ Our analysis begins, as it must, with the statutory language. See *Stowell v. Secretary of Health & Human Servs.*, 3 F.3d 539, 542 (1st Cir.1993) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 22 (1st Cir.1989). Examining section 187C's language in isolation and attributing to that language its "ordinary meaning," see *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 824 (1st Cir.1992), we conclude that the statutory reference to policies which are "subject to cancellation by the [insurer]" is, arguably, susceptible to either of the competing interpretations advanced by the parties. Although we are inclined to think that the term "cancellation" would not normally refer

to the lapse of an insurance policy for nonpayment of premiums, see 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 30.1 (1997) (stating that "[t]he right to cancel is the right to terminate a policy prior to its expiration, as distinguished from a policy's lapse, or expiration by its own terms"); *id.* § 30.2 (collecting cases distinguishing between cancellation and lapse in the context of insurance contracts), it could perhaps be argued that the term encompasses policies subject to discontinuation or annulment for any reason including non-payment of premiums. However, even assuming *arguendo* that the statute is ambiguous, the narrower meaning advanced by New York Life is borne out by inquiry beyond the language of section 187C.

Although the precise issue of state law before us has not been addressed directly by the Massachusetts Supreme Judicial Court, state decisions—through a process of negative inference—offer guidance on the applicability of section 187C in this context. Despite the fact that section 187C was added to the general laws in 1923, the Massachusetts Supreme Judicial Court did not refer to it in a 1931 decision concerning an insurer's refusal to pay benefits to a plaintiff when the decedent's life insurance policy had lapsed due to nonpayment of premiums. See *Kukuruza v. John Hancock Mut. Life Ins. Co.*, 276 Mass. 146, 176 N.E. 788 (Mass.1931). To the contrary, the *Kukuruza* Court recited traditional common law principles governing an insurer's obligations in the event of nonpayment of premiums:

> The continuance of the [insurer's] obligation under the policy, [except in circumstances not relevant here], was conditional upon the payment of premiums as provid-

---

**3.** Alternatively, New York Life argues that even if section 187C does apply in these circumstances, it complied with the statute's notification requirements. This alternative argument concerns the parties' competing interpretations of section 187C's third sentence, which provides in part that "[n]o written notice of cancellation shall be deemed effective when mailed by the company unless the company obtains a certificate of mailing receipt...." Mass. Gen. Laws ch. 175, § 187C. Kavanagh contends that this provision requires an insurer to obtain a certificate of mailing receipt in order to effect a cancellation.

New York Life, however, asserts that the provision does not require an insurer to obtain a certificate of mailing receipt to effect a cancellation; rather, it simply allows an insurer to *accelerate* the effective date of cancellation to the time when the notice is mailed if it obtains a certificate of mailing receipt. Because we conclude that section 187C does not apply in this case, we have no occasion to consider whether New York Life's notification—which the parties agree was not made by certified mail—complied with section 187C.

ed therein, and *no affirmative action by the [insurer] was necessary* to terminate the corresponding rights of the insured under the policy upon default in the payment of an instalment premium.

*Kukuruza,* 176 N.E. at 790 (citations omitted)(emphasis added); *see also Pierce v. Massachusetts Acc. Co.,* 303 Mass. 506, 22 N.E.2d 78 (Mass.1939) (applying equitable principles to allow reinstatement of disability insurance policy after insured failed to pay premium when due, and making no reference to section 187C); *Woodman v. John Hancock Mut. Life Ins. Co.,* 300 Mass. 486, 15 N.E.2d 812 (Mass.1938) (concluding that policy had lapsed due to nonpayment of premiums, and making no reference to section 187C).[4] The Massachusetts court's disregard of section 187C in the context of challenges to insurers' refusals to pay benefits under policies that have lapsed due to nonpayment of premiums—even though section 187C was on the books at the time of such decisions—strongly suggests that a "guaranteed-renewable" policy which lapses due to nonpayment of premiums is not governed by section 187C's "cancellation" notification requirements.[5]

Moreover, the statutory scheme governing accident and health insurance policies, Mass. Gen. Laws ch. 175, §§ 108–111, lends support to the conclusion that section 187C does not apply to policies which cannot be terminated by the insurer provided the insured pays the required premiums.[6] *See United States v. Ramirez-Ferrer,* 82 F.3d 1131, 1137–38 (1st Cir.1996)(en banc)(observing that "[t]he key to the 'whole act' approach is that all provisions and other features of the enactment must be given force"). Section 110B addresses directly notice requirements in the case of a termination or lapse of coverage of a noncancellable accident and health insurance policy due to nonpayment of premiums:

> No policy of insurance referred to in section one hundred and eight [concerning accident and health insurance] . . ., *except a policy which by its terms is cancellable*

---

4. The common law rule that insurance lapses upon the nonpayment of premiums was modified slightly in 1939 by Mass. Gen. Laws ch. 175, § 110B. *See infra.*

5. The parties direct our attention to four district court opinions, three of which are unpublished, which have addressed the applicability of section 187C to policies that have lapsed due to the insured's failure to pay the required premiums. Three of the opinions are in harmony with the conclusion we reach in the instant case. *See Gaffney v. AAA Life Ins. Co.,* 4 F.Supp.2d 38 (D.Mass.1998) (stating that "it is clear that [section 187C]'s notice provisions only apply in the case of cancellation of a policy and not in the case of lapse for nonpayment"); *Country Bank for Sav. v. Transamerica Occidental Life Ins. Co.,* Civil Action No. 93–30123–MAP, 1994 WL 512866, at *3 (D.Mass. Sept. 20, 1994) (holding that section 187C does not apply where policy "contains no cancellation provision" and was not "unilaterally cancelable" by the insurer); *Constantine v. Union Bankers Ins. Co.,* Civil Action No. 85–3727–S, slip op. at 6 (D.Mass. Jan. 22, 1987) (relying on *Kukuruza* to hold that section 187C "does not apply to situations in which a policy simply lapses for failure to pay a premium"). The fourth opinion, *O'Connor v. Allianz Life Insurance Co.,* Civil Action No. 94–12336–RGS (D.Mass. Nov. 9, 1995), reached a contrary result, albeit on facts that are readily distinguishable from those before us in the instant case.

6. Kavanagh urges us to consider the statutory scheme governing compulsory motor vehicle insurance policies, *see* Mass. Gen. Laws ch. 175,

§§ 113A–113T, in determining section 187C's applicability to his disability insurance policy. Section 113A, which requires written notice of a cancellation of a compulsory motor vehicle insurance policy, states in pertinent part:

> *If the reason for cancellation is for nonpayment of premium,* the notice of cancellation provided for in this provision shall state the amount of the deficiency . . . and shall state in substance that the cancellation will not be effective if the insured pays the full amount of such deficiency on or prior to the effective date of the cancellation.

Mass. Gen. Laws. ch. 175, § 113A(2)(emphasis added). Although Kavanagh correctly points out that section 113A contemplates nonpayment of premiums as a reason for "cancellation," we think that this section's unique context—namely, *compulsory* motor vehicle insurance—makes it unhelpful to our analysis. Because compulsory motor vehicle insurance has substantial public policy implications and affects the rights of third parties who are injured in automobile accidents, it is not surprising that the legislature would depart from the narrow meaning ordinarily ascribed to the word "cancellation" in the insurance context generally, *see* 2 Russ & Segalla, *Couch on Insurance 3d, supra,* § 30.1–.2, by treating lapse for nonpayment of premiums as a circumstance which triggers written notification procedures. The policy considerations at play in the compulsory motor vehicle insurance context make section 113A's unusually broad definition of "cancellation" inapposite to this case involving disability insurance.

by the company or is renewable or continuable with its consent, . . ., shall terminate or lapse for nonpayment of any premium until the expiration of three months from the due date of such premium, unless [the insurer complies with the notification procedures herein described].

Mass. Gen. Laws ch. 175, § 110B (emphasis added); *see also supra* note 4. Thus, section 110B demonstrates that the legislature contemplated two types of accident and health insurance policies: those that are subject to cancellation and those that are not. Kavanagh's expansive reading of the statutory phrase "subject to cancellation," however, virtually eviscerates this distinction. Because every insurance policy is conditioned on the payment of premiums, Kavanagh's position that discontinued coverage following nonpayment of premiums constitutes a "cancellation" would mean that virtually *all* accident and health insurance policies are "subject to cancellation," leaving section 110B nearly meaningless.[7] *See, e.g., United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 752–53 (1st Cir.1985).

This statutory scheme, imposing heightened notification procedures on policies that are subject to unilateral termination by insurers pursuant to a provision in the policies granting them that right, and excluding from those requirements policies which may remain in force at the discretion of the insured provided he or she pays the required premiums, makes practical sense. In the case of a policy which is guaranteed-renewable, the insured is guaranteed continued coverage by the very terms of the policy provided he or she pays the required premiums, and there is no need for heightened notification procedures to prevent the insured from being caught by surprise by the insurer's unilateral decision to terminate coverage.

Finally, we consider briefly Kavanagh's related contention that New York Life's decision not to exercise its right to reinstate the policy after it had lapsed for nonpayment of premiums constituted a "cancellation" of the policy, within the meaning of section 187C.[8] As a matter of logic, this argument must fail. Once the policy lapsed for nonpayment of premiums, all coverage terminated by the very terms of the policy. Accordingly, although New York Life had the power to reinstate the policy if it desired, no policy existed for New York Life to "cancel" and New York Life's decision not to reinstate the policy simply cannot be characterized as a "cancellation" of any obligation owed by it to Kavanagh. For these reasons, we find no error in the court's conclusion that section 187C does not apply in these circumstances and that New York Life was entitled to judgment as a matter of law.

*Affirmed.*

---

7. As pointed out by Kavanagh at oral argument, it is possible to imagine a policy that would not be "cancellable" under the definition he advances—namely, a policy that is fully pre-paid and for which no further payments are required to keep the policy in force during the entire period of coverage. While we acknowledge Kavanagh's point, we think it is unlikely that the legislature intended the distinction between cancellable and noncancellable policies embodied in sections 187C and 110B to reflect the narrow circumstance he contemplates.

8. The policy's reinstatement provision states in pertinent part:

**Reinstatement** You may ask that this policy be reinstated if it lapses. If your signed application is not required by us, the policy will be reinstated when we accept the correct premium . . . .

For a case in which your signed application is required by us, a receipt will be issued when the premium is paid. If that application is approved, the policy will be reinstated on the date of approval. However, if we do not tell you in writing, on or before the 45th day after the date of the receipt, that the application is not approved, the policy will be reinstated on that 45th day.