USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1407

 JAMES F. KAVANAGH, JR.,

 Plaintiff, Appellant,

 v.

 NEW YORK LIFE INSURANCE COMPANY,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Gibson,* Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 

 Robert P. Joyce, Jr., with whom Gabriel O. Dumont, Jr.,was on brief, for appellant.
 A. Hugh Scott, with whom William S. Hewitt, Jr., was on
brief, for appellee.

March 24, 1999

________________
 *Of the Eighth Circuit, sitting by designation. LIPEZ, Circuit Judge. This insurance case concerns the
effect of Mass. Gen. Laws ch. 175, 187C on defendant-appellee New
York Life Insurance Company's ("New York Life") refusal to pay
disability insurance benefits to James Kavanagh, Jr. The district
court ruled that New York Life did not have to comply with the
provisions of section 187C, which sets forth notification
procedures an insurer must follow to effect a "cancellation" of an
insurance policy, following Kavanagh's failure to pay the premiums
due on a policy issued to him by New York Life. Accordingly, the
court concluded that the policy was not in force at the time of
Kavanagh's disability and that he was not entitled to receive
disability benefits. We affirm. 
 I.
 The following facts are not disputed. In November 1992
New York Life issued to James Kavanagh, Jr. a Premier Disability
Income Policy ("the policy") which provided for the payment of a
monthly disability income benefit if he became totally disabled. 
Coverage under the policy was expressly conditioned upon the timely
payment of premiums, which were due quarterly. Page eleven of the
policy, entitled "Right to Renew Policy," provided in pertinent
part:
 Non-Cancellable and Guaranteed Renewable to Age 65 
 While this policy is in force and if the Insured has not
 reached age 65, we cannot take any of the actions listed
 below, without your consent. 

 (a) Refuse to let you renew the policy. 

Kavanagh made timely premiums payments as required by the policy
from the time it was issued through December 1995. 
 On February 14, 1996, New York Life sent Kavanagh a
premium notice for the quarterly payment due on March 6, 1996, by
first class mail to Kavanagh's address shown in New York Life's
records. Kavanagh alleges that he never received the notice. 
After he failed to pay the premium due March 6, New York Life sent
Kavanagh a lapse notice dated April 4, 1996, by first class mail to
the same record address. The notice stated that as of April 4
Kavanagh's policy had lapsed, and that the policy would be
reinstated if payment was received by May 4. Kavanagh alleges that
he did not receive the lapse notice. New York Life did not receive
the premium payment by May 4. 
 In August 1996 Kavanagh's physician determined that
Kavanagh was totally disabled due to a Grade III astocytoma of the
left frontal brain. In September 1996 Kavanagh filed with New York
Life an application for disability benefits, which was denied on
the basis that the policy had lapsed on April 4, 1996, for
nonpayment of the premiums due from March 6, 1996, and was not in
force when his total disability began. Kavanagh thereafter filed
an action seeking declaratory and monetary relief, alleging interalia that he was entitled to disability benefits under the policy
because New York Life failed to properly effect its cancellation
pursuant to Mass. Gen. Laws ch. 175, 187C. After the parties
filed cross-motions for summary judgment, the district court
determined that section 187C was inapplicable and granted summary
judgment in favor of New York Life. This appeal followed. 
 II.
 The question presented is narrow namely, whether Mass. Gen.
Laws ch. 175, 187C, which sets forth notification requirements
that an insurer must follow to effect a cancellation of any
insurance policy "which is subject to cancellation" by the insurer,
is applicable to the lapse of a guaranteed-renewable policy for
nonpayment of premiums. Section 187C provides in pertinent part: 
 
 A company issuing any policy of insurance
 which is subject to cancellation by the
 company shall effect cancellation by serving
 the notice thereof provided by the policy and
 by paying or tendering, [subject to certain
 exceptions not relevant here], the full return
 premium due thereunder in accordance with its
 terms . . . . Such notice and return premium,
 if any, shall be delivered in hand to the
 named insured, or be left at his last address
 as shown by the company's records or, if its
 records contain no such address, at his last
 business, residence or other address known to
 the company, or be forwarded to said address
 by first class mail, postage prepaid, and a
 notice left or forwarded, as aforesaid, shall
 be deemed a sufficient notice. No written
 notice of cancellation shall be deemed
 effective when mailed by the company unless
 the company obtains a certificate of mailing
 receipt from the United States Postal Service
 . . . . 

Mass. Gen. Laws ch. 175, 187C (emphasis added). Kavanagh urges
an expansive reading of section 187C's reference to policies which
are "subject to cancellation," arguing that this phrase
contemplates any policy which can be discontinued, including
policies which can be discontinued because of nonpayment of
premiums. Based on his premise that section 187C is applicable in
such circumstances, Kavanagh argues the policy was still in effect
at the time he became totally disabled because New York Life did
not notify him by certified mail of its intention to "cancel" the
policy due to nonpayment of premiums. 
 New York Life argues, however, that section 187C's
reference to policies which are "subject to cancellation"
contemplates policies that are subject to unilateral termination by
insurers pursuant to a provision in the policies granting them that
right, which was not the case with Kavanagh's policy. Rather, 
Kavanagh's policy expressly stated that it was "guaranteed
renewable" provided he paid the required premiums. According to
New York Life, section 187C's reference to policies which are
"subject to cancellation" was not intended to encompass policies
which simply lapse on their own accord due to nonpayment of
premiums, as here. Reviewing the court's interpretation of
Massachusetts law de novo, see Medical Prof'l Mut. Ins. Co. v.
Breon Lab. Inc., 141 F.3d 372, 374 (1st Cir. 1998)(citing Salve
Regina College v. Russell, 499 U.S. 225, 231 (1991)), we conclude
that the court properly ruled that section 187C does not apply in
these circumstances. 
 Our analysis begins, as it must, with the statutory
language. See Stowell v. Secretary of Health & Human Servs., 3
F.3d 539, 542 (1st Cir. 1993) (citing Estate of Cowart v. Nicklos
Drilling Co., 505 U.S. 469, 475 (1992)); Laracuente v. Chase
Manhattan Bank, 891 F.2d 17, 22 (1st Cir. 1989). Examining section
187C's language in isolation and attributing to that language its
"ordinary meaning," see Greenwood Trust Co. v. Massachusetts, 971
F.2d 818, 824 (1st Cir. 1992), we conclude that the statutory
reference to policies which are "subject to cancellation by the
[insurer]" is, arguably, susceptible to either of the competing
interpretations advanced by the parties. Although we are inclined
to think that the term "cancellation" would not normally refer to
the lapse of an insurance policy for non-payment of premiums, see2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d 30.1
(1997) (stating that "[t]he right to cancel is the right to
terminate a policy prior to its expiration, as distinguished from
a policy's lapse, or expiration by its own terms"); id. 30.2
(collecting cases distinguishing between cancellation and lapse in
the context of insurance contracts), it could perhaps be argued
that the term encompasses policies subject to discontinuation or
annulment for any reason including non-payment of premiums. 
However, even assuming arguendo that the statute is ambiguous, the
narrower meaning advanced by New York Life is borne out by inquiry
beyond the language of section 187C.
 Although the precise issue of state law before us has not
been addressed directly by the Massachusetts Supreme Judicial
Court, state decisions through a process of negative inference 
offer guidance on the applicability of section 187C in this
context. Despite the fact that section 187C was added to the
general laws in 1923, the Massachusetts Supreme Judicial Court did
not refer to it in a 1931 decision concerning an insurer's refusal
to pay benefits to a plaintiff when the decedent's life insurance
policy had lapsed due to nonpayment of premiums. See Kukuruza v.
John Hancock Mut. Life Ins. Co., 176 N.E. 788 (Mass. 1931). To the
contrary, the Kukuruza Court recited traditional common law
principles governing an insurer's obligations in the event of
nonpayment of premiums:
 The continuance of the [insurer's] obligation
 under the policy, [except in circumstances not
 relevant here], was conditional upon the
 payment of premiums as provided therein, and
 no affirmative action by the [insurer] was
 necessary to terminate the corresponding
 rights of the insured under the policy upon
 default in the payment of an instalment
 premium.

Kukuruza, 176 N.E. at 790 (citations omitted)(emphasis added); seealso Pierce v. Massachusetts Acc. Co., 22 N.E.2d 78 (Mass. 1939)
(applying equitable principles to allow reinstatement of disability
insurance policy after insured failed to pay premium when due, and
making no reference to section 187C); Woodman v. John Hancock Mut.
Life Ins. Co., 15 N.E.2d 812 (Mass. 1938) (concluding that policy
had lapsed due to nonpayment of premiums, and making no reference
to section 187C). The Massachusetts court's disregard of section
187C in the context of challenges to insurers' refusals to pay
benefits under policies that have lapsed due to nonpayment of
premiums even though section 187C was on the books at the time of
such decisions strongly suggests that a "guaranteed-renewable"
policy which lapses due to nonpayment of premiums is not governed
by section 187C's "cancellation" notification requirements. 
 Moreover, the statutory scheme governing accident and
health insurance policies, Mass. Gen. Laws ch. 175, 108-111, 
lends support to the conclusion that section 187C does not apply to
policies which cannot be terminated by the insurer provided the
insured pays the required premiums. See United States v. Ramirez-
Ferrer, 82 F.3d 1131, 1137-38 (1st Cir. 1996)(en banc)(observing
that "[t]he key to the 'whole act' approach is that all provisions
and other features of the enactment must be given force"). Section
110B addresses directly notice requirements in the case of a
termination or lapse of coverage of a noncancellable accident and
health insurance policy due to nonpayment of premiums:
 No policy of insurance referred to in section
 one hundred and eight [concerning accident and
 health insurance] . . ., except a policy which
 by its terms is cancellable by the company or
 is renewable or continuable with its consent,
 . . . , shall terminate or lapse for
 nonpayment of any premium until the expiration
 of three months from the due date of such
 premium, unless [the insurer complies with the
 notification procedures herein described]. 

Mass. Gen. Laws ch. 175, 110B (emphasis added); see also supranote 4. Thus, section 110B demonstrates that the legislature
contemplated two types of accident and health insurance policies:
those that are subject to cancellation and those that are not.
Kavanagh's expansive reading of the statutory phrase "subject to
cancellation," however, virtually eviscerates this distinction. 
Because every insurance policy is conditioned on the payment of
premiums, Kavanagh's position that discontinued coverage following
nonpayment of premiums constitutes a "cancellation" would mean that
virtually all accident and health insurance policies are "subject
to cancellation," leaving section 110B nearly meaningless. See,
e.g., United States v. Ven-Fuel, Inc., 758 F.2d 741, 752-53 (1st
Cir. 1985). 
 This statutory scheme, imposing heightened notification
procedures on policies that are subject to unilateral termination
by insurers pursuant to a provision in the policies granting them
that right, and excluding from those requirements policies which
may remain in force at the discretion of the insured provided he or
she pays the required premiums, makes practical sense. In the case
of a policy which is guaranteed-renewable, the insured is
guaranteed continued coverage by the very terms of the policy
provided he or she pays the required premiums, and there is no need
for heightened notification procedures to prevent the insured from
being caught by surprise by the insurer's unilateral decision to
terminate coverage.
 Finally, we consider briefly Kavanagh's related
contention that New York Life's decision not to exercise its right
to reinstate the policy after it had lapsed for nonpayment of
premiums constituted a "cancellation" of the policy, within the
meaning of section 187C. As a matter of logic, this argument must
fail. Once the policy lapsed for nonpayment of premiums, all
coverage terminated by the very terms of the policy. Accordingly,
although New York Life had the power to reinstate the policy if it
desired, no policy existed for New York Life to "cancel" and New
York Life's decision not to reinstate the policy simply cannot be
characterized as a "cancellation" of any obligation owed by it to
Kavanagh. For these reasons, we find no error in the court's
conclusion that section 187C does not apply in these circumstances
and that New York Life was entitled to judgment as a matter of law.
 Affirmed.